NEW-YORK,
May, 1815.

JACKSON
v.
LOUW.

JACKSON, *ex dem.* THE TRUSTEES OF THE TOWN OF KINGSTON, AND VAN AKEN *against* LOUW.

The legal title in the property belonging to the freeholders and inhabitants of *Kingston* continued to their trustees, until conveyed by them to the supervisors and overseers of the poor of the town of *Esopus, Saugerties,* and *Kingston,* under the 3d. sect. of the act to divide the town of *Kingston,* sess. 34. c. 161. *April,* 5. 1811.

Where one of the boundaries of the premises described in the deed is a line *to be run up a creek,* the line must be run through the middle of the creek, according to its turns and windings.

THIS was an action of ejectment for lands in the town of *Saugerties,* in the county of *Ulster,* and was tried before Mr. Justice *Van Ness,* at the *Ulster* circuit, in *September,* 1814.

The premises in question were within the bounds of the patent of *Kingston.* The plaintiff produced a deed, dated the 28th of *November,* 1812, from the defendant and others to *Van Aken,* one of the lessors of the plaintiff, of a lot of land, "beginning at a stone set up in the ground, standing on the south side of the *Plattekill,* and thence runs south, &c. west, &c. to a white oak tree marked, &c. then south, &c. to a white oak tree marked, standing near the said kill, then *up the said kill* north, &c. containing sixteen acres, one quarter, and sixteen perches."

The plaintiff also introduced a lease in fee, reserving an annual rent, executed by the trustees of the freeholders and commonalty of the town of *Kingston,* to *Abraham P. Louw,* the defendant's father, for the same premises, dated *Nov.* 8, 1771; and also a deed from the heirs of *Abraham Louw* to *Van Aken,* dated the 12th of *April,* 1813, for a certain piece of land, situate in the town of *Saugerties,* being part of land covered with water in the *Plattekill,* lying adjoining a lot containing sixteen acres, one quarter, and twenty-eight perches; and bounded as follows, "Beginning in the southeast corner of the said sixteen-acre lot, and runs thence southeast to the middle of the said kill, then up, through the middle thereof, northwardly, and northwesterly, until a south course will strike the northwest corner of the said lot, then with the said course to the same, and then along the same, to the place of beginning."

The plaintiff also produced a deed, executed by the trustees of *Kingston* to *Van Aken,* dated the 20th of *August,* 1813, of "all that certain small lot or parcel of land which was lately in the possession of *Abraham Louw, jun'r,* deceased, situate in the town of *Saugerties,* adjoining the southerly bounds of the land conveyed by the heirs of the said *Abraham Louw, jun'r,* to the said *John C. Van Aken,* on the westerly side of the *Plattekill,* and is bounded as follows," &c.

The plaintiff also produced a deed from the trustees of *Kingston* to *Abraham Louw, jun'r, alias dictus, Abraham P. Louw,* for parts of lots 51 and 52.

The defendant then read in evidence a deed from the trustees of *Kingston* to *Peter Louw,* dated 30th of *June,* 1804, for lot No. 50, and parts of No. 51 and 52, "beginning at a stake marked, standing on the south line of lot No. 53, and in the line of a lot this day conveyed to *Abraham Louw, jun'r,* and runs thence south to a stake, &c., thence north, &c., thence south, &c. to the *Plattekill, thence up the same* to the southwest corner of a lot this day conveyed to the said *Abraham Louw, jun'r,* thence, &c., containing forty-eight acres, excepting two small lots belonging to his father."

Testimony was introduced respecting the manner of running the line *up the kill,* which appears to have been the principal question, as to the boundaries, made in the cause.

There was another question as to the location of the lots excepted in the last-mentioned deed from the trustees to *P. Louw.* *John A. Louw* proved that these lots were in the possession of the defendant's father, at the time the defendant obtained the deed from the trustees, and were claimed by the defendant's father from the trustees, until his death; these lots were understood by all as being excepted in the deed to *P. Louw,* and were south of the sixteen-acre lot of leased land. *William Blackwell* also testified to the same facts.

The jury, by the direction of the judge, found a verdict for the plaintiff, reserving the question as to the true mode of running the line to the southwest corner of the land of *Abraham Louw, jun'r,* for the opinion of the court.

*Sudam,* for the plaintiff.

*L. Elmendorf,* contra.

YATES, J., delivered the opinion of the court. It is admitted that the lands in question are included in the patent of *Kingston;* and the deed from the trustees of *Kingston* to the lessor of the plaintiff, evidently comprehended the premises in question. Unless, therefore, the premises passed to the defendant by the deed from the same trustees of the 30th of *June,*

1804, the plaintiff must recover, at all events, to the extent of what is not embraced by that deed; provided the trustees, on the 12th of *April*, 1813, had a right to convey to the lessor of the plaintiff, or still retained title to the premises sufficient to enable them to recover on their own demise.

Admitting that by the operation of the act of 1811, (34 *sess. ch.* 161.) the trustees are entitled to convey, and that their deed to *Van Aken* is void, yet the legal title remains in them, until a transfer is made by them to the supervisors or overseers of the poor pursuant to the act. The act is somewhat obscurely worded, but when all its parts are taken together, it must be construed as only directing the trustees to convey. The second section declares, that, as soon as may be, after the first Tuesday in *May* then next, all the corporate estate and interest remaining undivided of the freeholders and commonalty of *Kingston* shall be, and thereby is declared to be, vested in the supervisors of the poor. If the title was intended to be vested in the supervisors of the poor, by operation of the statute solely, it would not have declared that as soon as *may be* after the first of *May*, &c. The expression necessarily implies that something was to be done after the first of *May*, to pass the title; hence the necessity and propriety of the provision in the third section: "That as soon as may be after the first of May, the supervisors should notify the trustees and overseers of the poor to convene;" and requiring the trustees to make a full surrender, transfer, assignment, and delivery to the supervisors and overseers of the poor, of all the estate vested in them, in trust for the freeholders and inhabitants of *Kingston*. If the estate was vested in the overseers, by operation of the second section, this provision was unnecessary, and, indeed, absurd, for if the estate had already passed by the act, they could not transfer any thing to the overseers of the poor and the supervisors.

There is an incongruity between these two sections. The second declares the estate vested in the overseers of the poor; and the third requires the trusteess to assign, transfer, and surrender the same to the supervisors and overseers of the poor. It must undoubtedly have been the intention to vest the interest in the supervisors and overseers, because the supervisors are made a part of the board which is to meet, to take the management and direction of the property, paying debts, and making division of the lands; and to whom the trustees are to account.

2

According to this construction, then, the title remains in the trustees until they transfer the same to the supervisors and overseers ; and there is no evidence that this has been done. The trustees, therefore, still retain a right to recover on their demise, if they have not parted with that right by the deed of 1804.

The defendant, by the deed of the 30th of *June,* 1804, is not entitled to more than one half of the *Plattekill,* or creek. After stating the course leading *to the creek,* the words used are, *" thence up the same to the southwest corner of a lot conveyed to Abraham Louw, jun'r.*

There can be no doubt but that this lot must follow the creek upon one of its banks, or through the middle. This description or boundary never can be satisfied by running a direct or straight line. The terms " up the same," necessarily imply that it is to follow the creek, according to its windings and turnings, and that must be in the middle or centre of it. The rule is well settled, that when a creek, not navigable, and which is beyond the ebb and flow of the tide, forms a boundary, the line must be so run.

The small lot belonging to, or possessed by, the father of the defendant, and excepted in the deed under which he claims, was sufficiently located by the testimony of *John A. Louw* and *William Blackwell,* to warrant the verdict of the jury. They both agree that the situation of the land thus excepted, was south, and adjoining the sixteen-acre lot ; that the father of the defendant and of one of the witnesses possessed it at the time the above deed was executed by the trustees to the defendant, and, consequently, claimed it in behalf of the trustees, and continued to do so until his decease. This ought also to be included in the recovery.

Judgment for the plaintiff.