Carr, J.
The question is, whether, under all the circumstances of the case, it will be most conducive to justice, to execute or to rescind the contract between Andrew Van Bibber and Edwards?
It is insisted by the appellants, that we ought not to force upon them a purchase of land, to which they cannot get a perfect title. This might have been a very different question, if the vendee, who by the contract was to get a title on making the last payment, had, when that payment fell due or soon after, tendered it, and demanded his title: a bill to rescind, then, would in all probability (if the title proved *193 materially defective) have been successful, though possession had been taken. But he and his heirs have held the land above thirty years; they made no effort to perfect their title or to rescind the contract; and it is only now, when pressed by the other side, that they resort to it as a defence. If, under such circumstances, they can be made reasonably secure in the title, justice seems to say, that they ought to be compelled to take it, and pay the residue of the purchase money. It appears, that Nicholson acquired the land in question, by conveyance from the Johnsons, in 1778, upwards of fifty years ago; that on 15th September 1779, Abraham Van Bibber had bought of Nicholson and fully paid for the land, and by the terms of the contract, had a perfect right to a deed; and that he was, in 1779, put into possession, which has, by him and those claiming under him, been held uninterruptedly to the present time, a period wanting but a few months of fifty years. In this state of things, it was strongly contended, that the court ought to presume that a deed had been made by Nicholson to Van Bibber: for, as Van Bibber was not bound to pay till a title was made, nor had Nicholson a right to call for payment till he made a conveyance; as Nicholson had a clear legal title, and there were no impediments to his conveying; as it was his duty to convey, and Van Bibber’s interest to insist, on a deed; and as Van Bibber’s possession had been uninterrupted ever since; the necessary conclusion is, that a deed was made when the last payment was made, which by time or accident has since been destroyed. And this conclusion, it was insisted, rested upon the presumption, that Nicholson, who after the money paid was but a mere trustee, had done what he was bound to do; and also upon that more general ground of presumption, that, from the infirmity of our nature, and the difficulty of retaining or producing evidence of ancient transactions, it has been found convenient and necessary, for the preservation of property and rights, to have recourse to some general principle, to take place of Individual and specific belief. There is, to my understand» *194 ing, much weight in these considerations: but I shall not decide, whether in this case we ought to presume a deed. (The doctrine on this subject, is well treated of in the following cases; Hillary v. Waller, 12 Ves. 239. Prevost v. Gratz, 6 Wheat. 481. Cowp. 102. 217. 7 Wheat. 109. 8 East. 467. 3 Stark. Ev. part iv. 1200. 1228.*) The question with us, is, whether upon all .the facts, it will be just and equitable to decree, that the appellants shall accept a deed with general warranty, from the heirs of Andrew Van Bibber, and pay up the residue of the purchase money?
I am clearly of that opinion, unless the escheat shall be found to present a difficulty. There is something in this proceeding, which I find it difficult to account for, on fair principles. This suit, in which the rights of the parties.are set put, had been pending before the court three years, when the inquest was taken; and whatever might be the conclusion as to the legal title, it was most manifest, that Nicholson more than forty years before had sold the land, and received full payment; most clear also, that the Van Bibbers, and those holding under them, had been in possession, as purchasers for value, and as such had paid taxes to the commonwealth upwards of forty years. This, we all know, was a full answer to any claim the commonwealth could make. And yet, in the face of all this, an inquest was found, es-cheating this land to the commonwealth for defect of heirs of Nicholson. The jury was sworn to inquire, what lands Nicholson died seised of, and whether he left any heir, or made any disposition of the lands in his life-time; and they found that he died without heir, and made no disposition of this land. Why did not the appellants, by traverse, monstrans de droit, dr petition of right, contest this finding? The answer cannot be doubted: they wished it to succeed, supposing that it would strengthen their case for a rescission of the contract. As to the escheator, it is charitable to suppose, that he has acted, from misguided zeal to be doing *195 something in his office. It is most clear to me that this proceeding ought not to present the slightest obstacle to the decree of the court.
The decree, however, is a personal one against the heirs of Edwards the vendee, and so far erroneous. It must, therefore, he reversed, and a decree entered, that unless the money be paid in six months the land be sold; and, in addition, that the commonwealth and her officers be perpetually injoined from taking any proceeding on the escheat.
The other judges concurred. The decree was reversed with costs, for the errors mentioned by judge Carr, but approved in all other respects.

 The edition referred to is Ingraham’s, Boston, 1828.