## DEMEYER vs. LEGG.

Where lands are bounded by a stream or river not navigable or above tide water, the grantee takes *usque filum aquæ*, unless the stream or river be expressly excluded from the grant by the terms of the deed.

This will be the construction given to a deed, on a motion for a new trial, though there was, at the trial, no proof, in terms, that the stream was not navigable or above tide water, if it sufficiently appears from the nature of the property in controversy and the uses to which it was applied; as, where it consisted of a fall and dam, used for milling purposes. Nor will an objection to a want of such evidence be heard, on a motion for a new trial, when, if made at the trial, the defect might have been supplied.

Recitals in a deed are evidence of the facts stated in them, as between the parties to a deed and those deriving title under them.

A grant of land will be presumed, in favor of a party in possession, when the lapse of time is so great as to create the belief that it was actually made; or when the facts and circumstances in the case show that he is legally and equitably entitled to it.

Where there is a contract to sell land, and the vendee has entered into possession and paid the purchase money, this being a case in which a court of equity would at once decree a specific execution, a court of law will, after a great lapse of time, presume a conveyance, and that the title is in the vendee.

Demeyer *v.* Legg.

Presumption in favor of a probability, and to protect the equitable right of the occupant, is made to supply the place of positive proof, where an ancient title deed has happened to be lost, or where a fact is to be established, which occurred at so remote a period that no cotemporary is living, to testify to its existence.

THIS was an action of ejectment brought to recover the north half of the stream and falls in the Esopus creek, at a place called " Demeyer's Falls." It was tried before justice Harris, at the Ulster circuit in May, 1851. The plaintiff introduced a deed, dated February 20, 1688, from the trustees of the corporation of Kingston, to Wilhelmus Demeyer, for 800 acres of land situated in the town of Kingston, lying on the northerly side of said creek. By the description in the deed the boundary line ran " to the said Esopus kill or river; thence southerly along the said river by a piece of land of Hendrick Alberse, and by his bounds to said river; thence along the said kill or river to the creek brook where first began." It was admitted that Wilhelmus Demeyer died in 1758, leaving his son Nicholas Demeyer his sole heir at law surviving. The 800 acres above mentioned passed by will from Nicholas Demeyer to his son Benjamin Demeyer, who devised them to his son John Demeyer and Nicholas Demeyer the plaintiff, and his daughters Elizabeth Schuneman and Polly Demeyer. A partition was made between these devisees, and subdivision No. 4, that being the parcel of land opposite to the falls, fell to the plaintiff and was released to him by the other devisees.

The defendant introduced a deed from Abraham Van Gaasbeck Chambers and Nicholas Demeyer to William Kieffer, dated 30th January, 1756, for 20 acres of land lying on the easterly side of the Esopus kill. This land lay on the other side of the creek, and opposite that part of the falls in question, and the boundary line was given as running to and then along said creek. The defendant then introduced a warranty deed from William Kieffer to his son Baltus Kieffer, dated April 19, 1784, for " all that one half of the conveniency of the fall and place to erect a grist mill, to be erected by the parties aforesaid, equal share in

said mill and equal in expense and cost of building it, and also one half acre of land at and adjoining the said falls," &c.

The defendant then gave in evidence a deed from the trustees of the corporation of Kingston, dated 9th January, 1805, to Baltus Kieffer, for all that certain fall of water situate in the town of Kingston aforesaid, commonly called Kieffer's falls, and a deed of warranty, dated September 12, 1836, from the widow and heirs of Baltus Kieffer to the defendant, for the farm of Baltus Kieffer, together with the houses, barns, grist mills, falls, &c.

It was claimed on the part of the defendant, that if William Demeyer (called Wilhelmus in the deed of 1688) ever had any title to the falls, it had been reconveyed to the trustees of the corporation of Kingston, in 1709, as part consideration for the latter conveying to said William Demeyer and Abram Van Gaasbeck Chambers other falls about two miles further down the creek; and thus, that the said trustees were the owners of the property in controversy when they conveyed to Baltus Kieffer in 1805. In support of this defense the defendant proved by the record a deed of which the following is a copy, which purported to have been recorded by William Demeyer the grantee, as clerk of the board of trustees, who were the grantors: " To all Christian people to whom this present writing shall or may come, the Trustees of the freeholders and commonality of the corporation of Kingston in the County of Ulster, sendeth greeting : whereas said trustees for divers good causes and considerations them thereunto moving, but more and especially for, and in consideration of a certain fall situate and being in yᵉ Esopus Kill or river, betwixt yᵉ lands of William Demeyer and yᵗ wʰ did belong unto Hendrick Alberse, together wᵗʰ yᵈ run or course of water for yᵉ driving of mill or mills, wʰ was upon y 25th day of February 1694–5, conveyed unto yᵉ sᵈ Wm. demeyer by yᵉ Trustees of sᵈ corporation, wʰ sᵈ fall, runn or course of water yᵗ said William Demeyer doth by these presents, for himself, his heirs, executors, and administrators forever release and acquit, and to bee and forever to remain in Common.   Have bargained, sold, alienated, enfeofed, assigned and sett over, and

Demeyer *v.* Legg.

by these presents do bargain, sell, alienate, enfeofe, assign and sett over unto y$^e$ s$^d$ William Demyer and Mr. Abram Gaasbeck Chambers, all y$^t$ certain fall situate, lying and being in y$^e$ aforesaid kill or river, about north east from y$^e$ land of Jan Oosterhoudt, together with the runn or course of water for y$^e$ driving of mill or mills there to bee erected on or near s$^d$ fall; likewise four acres of up land adjoining to y$^e$ land of Hillegonda Van Sligbenhorst, to have and to hold the s$^d$ fall, course or run of water, for to erect mill or mills on or near y$^e$ same : and y$^e$ s$^d$ four acres of upland unto them y$^e$ s$^d$ William Demyer and Mr. Abram Gaasbeck Chambers, their heirs and assigns, and to y$^e$ only proper use, benefit, and behoofe of them the s$^d$ William D'myer and Abram Gaasbeck Chambers, their heirs and assigns forever, and y$^t$ noe person or persons whatsoever shall or may upon any manner or way, or at any time hereafter presume to endeavor to draw y$^e$ s$^d$ course or run of water, or part of y$^e$ same to any other place whatsoever ; but y$^e$ same to bee wholly at y$^e$ disposall of y$^e$ s$^d$ William Demyer and Abraham Gaasbeck Chambers, their heirs or assigns, for y$^e$ driving of s$^d$ mill or mills there to be erected : provided always, y$^t$ y$^e$ s$^d$ William Demyer and Abram Gaasbeck Chambers, or either of them, their or either of their heirs build and furnish a mill at y$^e$ place afores$^d$, and never be permitted to build dam or dams on s$^d$ fall, but only to stop the holes if any happen to bee in s$^d$ fall. In testimony whereof the s$^d$ Trustees have hereunto putt their hands and caused the seale of y$^e$ Corporation to be hereunto affixed, in Kingstonn, the first day of March, 1709–10." (Signed by Derick Schepmoes and others, trustees.)

Evidence was introduced, showing the existence of the original deed in the possession of the plaintiff, and that when the lower falls were offered for sale the plaintiff claimed to own them, under the said last mentioned deed. It was also claimed, on the part of the defendant, that the defendant and those under whom he claimed had had possession of the premises in question without interruption, and claimed to own them, since 1784. There was evidence introduced in support of such claim, and also evidence on the part of the plaintiff, tending to show

that such possession did not extend beyond the center of the creek till the defendant extended his dam across the creek, less than 20 years ago.

The judge charged the jury that the plaintiff had shown a proper title to the north half of the stream; that this carried the title to the center of the stream, it not being navigable; that the defendant had failed to show title out of the plaintiff to the north side or half of the stream, unless the plaintiff had lost it by adverse possession; that it was a question for the jury, whether the defendant had shown that Keiffer and the defendant had for 20 years used and occupied it in the manner the defendant now claims ; if they should find they had not, then he had failed to make out an adverse possession, and his defense in that respect had failed, to the north half of the stream and fall.   Each of these several propositions was excepted to by the defendant's counsel.

The jury found a verdict for the plaintiff for so much of the falls and premises as were situated westerly or northerly of the center of the stream, and the defendant brought up the cause on exceptions.

*M. Schoonmaker*, for the plaintiff.

*John Van Buren*, (of Kingston,) for the defendant.

*By the Court*, PARKER, J.   The judge was clearly right in holding that the deed of 1688 to Wilhelmus Demeyer; the ancestor of the plaintiff, carried a title to the center of the stream. The law is well established, that when lands are bounded by a stream or river not navigable or above tide water, the grantee takes *usque filum aquæ*, unless the stream or river be expressly excluded from the grant by the terms of the deed.   (*Canal Com'rs* v. *The People, 5 Wend.* 423.   *Luce* v. *Carley*, 24 *Id.* 451.)

Nor did it need any proof, in terms, that the stream was not navigable or above tide water.   The fact sufficiently appeared from the existence of the fall and dam, and the uses to which

they were applied. Besides, no such point was specifically taken on the trial, where the defect of proof, if there was any, might have been supplied. It was a question of fact, and properly submitted to the jury to decide, whether the defendant had shown that Keiffer and the defendant had for 20 years used and occupied the premises in the manner claimed by the defendant. If the jury erred in their conclusion upon this point, the remedy of the defendant was upon a case, and not upon a bill of exceptions.

Whether the judge was right in charging that the defendant had failed to show title out of the plaintiff, to the north half of the stream or fall, depends upon the legal effect to be given to the recitals in the deed from the trustees of the corporation of Kingston to William Demeyer and Abram Van Gaasbeck Chambers, in 1709, and to the evidence tending to show that William Demeyer had reconveyed the premises in question to the trustees. If such a reconveyance was made, then the defendant obtained a perfect title to the property in controversy, through the deed from the trustees to Baltus Kieffer, in 1805, independent of any adverse possession. By the deed of 1709, the trustees conveyed to Demeyer and Chambers certain other falls and water privileges and four acres of land further down said creek, and the consideration of said deed was stated in the following words : " Whereas said trustees, for divers good causes and considerations them thereunto moving, but more and especially for and in consideration of a certain fall, situate and being in ye Esopus kill or river, betwixt ye lands of William Demeyer and yᵗ wʰ did belong unto Hendrick Alberse, together with yᵈ run or course of water for ye driving of mill or mills wʰ was upon yᵉ 25th day of February, 1694–5, conveyed unto ye sᵈ Wm. Demeyer by ye trustees of sᵈ corporation, wʰ sᵈ fall, run or course of water ye sᵈ Wm. Demeyer doth by these presents for himself, his heirs, executors and administrators forever release and acquit, and to be and forever to remain in common, have bargained," &c. This deed was satisfactorily proved. It was read in evidence from the book of records kept by the trustees, where it was recorded by William Demeyer, the grantee, who was

clerk of the board. The original was proved to have been in the possession of the plaintiff, who claimed, under it, the property conveyed by it; and in consequence of such claim the heirs of Chambers sold only half of the property as belonging to them. I think this deed was properly received in evidence; but however that may be, the decision admitting it cannot be questioned here, on the defendant's bill of exceptions, and we must consider the deed as established.

Two important facts are stated in the recital of this deed. The *first* is, that on the 25th of February, 1694–5, the trustees conveyed to William Demeyer the falls in controversy. By the deed of 1688, Demeyer took only to the center; that is, he acquired by it the northerly half of the stream. If a further conveyance of the falls was made to him in 1694–5, he must have taken, under it, the southerly half, and thus have become the owner of the entire falls. The *second* fact appearing by the recital is, that the principal consideration for the deed of 1709 was the reconveyance to the trustees, by Demeyer, of the falls in question.

These recitals are evidence of the facts thus stated, as between the parties to the deed and those deriving title under them. In *Torrey* v. *The Bank of Orleans*, (9 *Paige*, 659,) Chancellor Walworth said, "A recital of a fact in a deed is, as against the grantee in such deed, and all persons claiming under him, through that deed, evidence of the facts recited therein, so as to save the necessity of further proof thereof by the grantor or those who claim under him. The acceptance of the deed operates as an estoppel upon the grantee and those who claim under him, as against the grantor and his assigns or representatives." This rule is well settled. (*See Carver* v. *Jackson*, 4 *Peters*, 83, 88, *and Sinclair* v. *Jackson*, 8 *Cowen*, 586.) The latter case recognizes the principle that a man who admits the existence of a fact or deed, either by reciting it in an instrument executed by him, or by acting under such instrument, shall not be received to deny its existence. This principle is applicable to the recitals in the deed under consideration. The plaintiff, who claimed title under the deed, and asserted and

Demeyer *v.* Legg.

maintained it, is as much bound as was his ancestor, the grantee. The defendant represents the grantors from whom he derived his title; and he has a right to insist upon the proof thus established by the recital. It is not necessary in this case to say that the plaintiff was estopped from contradicting the facts stated in the recital. No offer was made to do so. It is enough to say that such facts were evidence against the plaintiff, and being uncontradicted, are to be taken as true. It must therefore be considered as established in this case, that the trustees conveyed the falls in question to William Demeyer in 1694–5, and that a reconveyance thereof to the trustees formed the principal consideration of the deed of other property, executed by the trustees, to Demeyer and Chambers, in 1709.

These facts being established, it is shown that the property in question was purchased from William Demeyer, and paid for by the trustees, in 1709. It also appears that no claim was ever afterwards made to the property by William Demeyer, or his descendants, until this action was brought—a lapse of about 140 years; that in 1805 the party who had thus re-purchased the property, conveyed it by deed to Baltus Kieffer, whose father had been in possession of the southern half of the stream, under a deed, for 20 acres bounded by the creek on the south side, since 1756; and that the defendant succeeded to the rights and possession of Baltus Kieffer, in 1836.

It was not controverted but that the defendant, and those under whom he claimed, had been in possession of the southern half of the stream since 1756, and had used it for milling purposes since 1784. It was not contended that the plaintiff, or those under whom he claimed, ever had any actual occupation of the northern half of the stream, at the falls, or had ever made any use of it, but the plaintiff rested his right to recover upon his paper title alone. It was denied that the defendant's dam had been extended across the stream till within 20 years, and so the jury found; though it appeared that the defendant, and those under whom he claimed, had, long before, occasionally done some act north of the center of the stream, for the purpose of securing the benefit of the water, at their will.

Under these circumstances, the question arises, whether the law will presume a conveyance by deed from William Demeyer to the trustees, in accordance with the agreement recited in the deed of 1709. In addition to the recitals already referred to, the following clause appears in the deed of 1709 : "w$^h$ s$^d$ fall, runn or course of water y$^e$ said William Demeyer doth by these presents for himself, his heirs, executors and administrators forever release and acquit," &c. Here then, in addition to the agreement to re-purchase, the payment of the purchase money and the surrender of possession which seems to have been made, by its never having been claimed, is an actual attempt to reconvey, in language clear and explicit. All that is wanting to make the reconveyance complete, beyond cavil, is the signature of William Demeyer, either to the deed or to a counterpart.

A grant of land will never be presumed, unless the lapse of time is so great as to create the belief that it was actually made ; or unless the facts and circumstances in the case show that the party to whom it is presumed to have been made was legally or equitably entitled to it. (*Jackson* v. *Moore*, 6 *Cowen*, 725. 1 *Cowper*, 102. *Bull. N. P.* 74. 3 *T. Rep.* 157.) It is enough if this case comes within either of these alternatives. I think it comes within both. The lapse of time, and the absence of claim or 'occupancy, is sufficient to warrant the belief that a counterpart or separate grant was actually executed; and certain it is that the trustees were legally and equitably entitled to such conveyance.

When there is a contract to sell land, and the vendee has entered into possession, and paid the purchase money—this being a case in which a court of equity would at once decree a specific execution—a court of law will, after a great lapse of time, presume a conveyance, and that the legal title is in the vendee. (5 *Cranch*, 262. 2 *John.* 221, 226. 7 *Id.* 5. 3 *Wend.* 149, 152. 2 *J. J. Marsh.* 436. 4 *Wash. C. C. R.* 356, 367. 1 *Leigh*, 183. 1 *Cowen & Hill's Notes*, 369, 370.) It is only necessary that the contract should be fulfilled by payment on the part of the vendee, and a rightful possession, so that the mere form of conveyance only is wanting. (*Harp. Eq. Rep.*

184, 192. 2 *Halst.* 41, 56. 3 *Harris & John.* 462.) In *Downing* v. *Ford*, (9 *Dana*, 391,) it was held, in Kentucky, that after 20 years' possession under a title bond, a deed in compliance with the bond might be presumed by the jury. And in *Jackson* v. *Murray*, (*Anth.* 105,) there had been a very long adverse possession of only a part of the lands covered by the agreement, but the court allowed the jury to presume a grant of the whole, the partial possession having continued in the vendor and his family from time immemorial. The existence of a very old deed, alone necessary to complete a perfect title in one in possession of land, will be presumed. (*Arthur* v. *Arthur*, 2 *Nev. & Man.* 96.)

The principle upon which these decisions are founded is of great importance to the public and to individuals, in quieting titles to land. Presumption in favor of a probability, and to protect the equitable right of an occupant, is made to supply the place of positive proof, when an ancient title deed has happened to be lost, or where a fact is to be established which occurred at so remote a period that no cotemporary is living to testify to its existence. I think this principle is applicable to the case before us, and that it fully warrants the presumption of the executing of a counterpart, or of a grant, from William Demeyer to the trustees of the corporation of Kingston, in pursuance of the agreement and conveyance of 1709. Whether the defendant and those under whom he claims had or had not kept a dam extended across the whole width of the creek, over twenty years, it is certain they had owned and occupied on the easterly side of the creek, and to the center of it, for ninety-four years, and they had used the water at the falls as a mill privilege for sixty-six years, without being disturbed or questioned; and while so using it they had held a deed covering the whole property in controversy, for forty-five years, under which they claimed to own it. At the time that deed was executed, the counterpart of the deed of 1709, or the deed then executed by William Demeyer, was probably in existence and in the possession of the trustees, and it may well be supposed that upon that evidence of their title before them they executed the deed of

1805. It is needless to look for evidence at the records in the clerk's office ; for Ulster was not a recording county till over a century after the transaction. No one is alive, to speak of what occurred at so remote a time ; and but for the circumstance of the recitals in the deed, no proof might have existed. Those recitals, however, are clear and explicit. And it seems to me a stronger or more appropriate case for the raising of a presumption of a grant could hardly be conceived, even for the purpose of illustration.

If I am right in this conclusion, the judge erred in holding that the defendant had failed to show title out of the plaintiff to the north side or half of the stream; and the exception to such part of the charge was well taken. For this reason the judgment at the circuit must be reversed, and a new trial ordered.

[ALBANY GENERAL TERM, May 2, 1853. *Watson, Parker* and *Wright*, Justices.]