(\*) PIKE *versus* MUNROE.

A conveyance of land, bounding it *on* a fresh water stream, extends to the centre or thread of the main channel of the stream.

The purchaser of upland, adjoining navigable tide waters, takes the shore to low water mark, where the ebb of the sea does not extend more than one hundred rods.

A grant conveying land, bounded at a monument, at high water mark, thence running *down river* to another monument, proved to be some short distance back from the edge of the bank; and extending back between parallel lines *from said river*, far enough to embrace a specified number of acres, conveys not only the upland but the flats to the distance of one hundred rods, if they extend so far.

In construing a deed of conveyance, the legal rule is, to give effect to the intention of the parties, if practicable, when no principle of law is thereby violated.

Such intention is to be ascertained by taking into consideration all the provisions of the deed, as well as the situation of the parties to it.

Whatever, in a conveyance, is expressly granted, cannot be *diminished* by subsequent restrictions. But general or doubtful clauses may be *explained* by subsequent words or clauses, not repugnant to the express grant.

Doubtful words and provisions in a grant are to be construed most strongly against the grantor.

ON FACTS AGREED AND ON DOCUMENTS AND TESTIMONY REFERRED TO.

WRIT OF ENTRY to recover possession of a piece of land on the river St. Croix, in Calais, where the tide flows and ebbs.

The demanded premises are part of a strip of flats or shore, twenty-five rods wide, and lying between high water mark and low water mark.

In 1792, John Bohannan purchased one hundred acres of

land in the then plantation No. 5, now the city of Calais. It was bounded as follows : — " Beginning the south side of a large white rock on the bank ; " " and from thence running *down river* 50 rods to a stake and stones ; [the testimony showed that " the white rock was not entirely covered by the tide at high water," and " that the stake and stones were situated on the bank of the river, on the top of the bank in the bushes, some short distance from the edge of the bank"] and from said rock first mentioned, and said stake and stones running back *from said river* 50 rods wide, in parallel lines, south-west, so far as to include the full quantity of one hundred acres, with the privileges and appurtenances thereto."

In the construction of this deed, the controversy was, whether it did or did not convey the flats or shore below the high water mark.

Edward H. Robbins was one of the grantors in that deed.

In 1796, Bohannan conveyed the lot to Robbins, by the same description.

In 1797, Robbins conveyed to Bohannan the northerly part of said lot by the following description : —

" All my right, title and estate in the northerly *moiety or half* of the hundred acre lot on which the said Bohannan now lives, *and bounded on said river ;* the half part hereby conveyed is bounded as follows, to wit : — *Beginning on the bank of said river at high water mark,* on the line dividing the premises from the lot on which David Ferrol lived, and commonly called the Ferrol lot, and thence running on the bank of said river on high water mark twenty-five rods, and from thence, and the bounds first mentioned, extending back by parallel lines one mile, according to the courses by which the conveyance of said land was made to said Bohannan, so as to include fifty acres. And I, the said Robbins, do hereby covenant with said Bohannan, that the premises are as free from all incumbrances as when conveyed by him to me."

An examination of subsequent conveyances shows, that if a title to the flats was acquired to Bohannan, under the last described deed of Robbins to him, the demandant has failed

to establish any title in himself, so far as relates to the part now in controversy.

The Court, by agreement of parties, having power to draw inferences as a jury might, " are to enter judgment as to law and justice shall appertain."

Such further facts, (relative to the occupation of the prem-ises and the situation of the parties,) as the Court considered auxiliary to a rightful construction of the deeds, are stated in their opinion.

*Pike,* for the demandant.

*Downes* and *Chase,* for tenant.

RICE, J.—Both parties trace their title to the same source, claiming through mesne conveyances from John Bohannan, who was the grantee of the original proprietors of the town of Calais. November 10, 1796, Bohannan conveyed to Ed-ward H. Robbins, one hundred acres of land situate in the present city of Calais, then plantation No. 5, in Washington County, by the same description contained in his deed from the proprietors, to wit:— " Beginning at the south side of a large white rock on the bank, in a south-west direction from the space between two uncovered rocks at the first small point above Stone Point, so called, and from thence running down river fifty rods to a stake and stones, and from said rock, first mentioned, and said stake and stones, running back from said river, fifty rods wide, in parallel lines, south-west, so far as to include the full quantity of one hundred acres, with privileges and appurtenances thereto."

Samuel Jones, in his deposition states, that the " white rock," on the bank of the river, was not entirely covered at high water; and that the " stake and stones," were situated on the bank of the river, on the top of the bank, in the bushes, some short distance above the edge of the bank.

The first question raised, is whether the line starting from the white rock and running *down river* to a stake and stones, is a line running on the river, or whether the words *down*

*river* simply indicate the general direction of the line from one monument to the other.

In *Hartsfield* v. *Westbrook*, 1 Hay. N. C. 258, it was held, that the terms in a deed, " down the swamp," constituted the swamp the boundary, though a straight course from the monuments at the *termini* of the line would not follow the line of the swamp.

In *Den* v. *Mabe*, 4 Dev. 180, the Court held, that a line from a monument on a river, west, " *up the river*" to a stake, was equivalent in law to " with the river" and that the line must pursue the course of the stream.

A call in a deed, " up the creek," means, ordinarily, a line run with the creek, and does not indicate the general course of the line. *Buckley* v. *Blackwell*, 10 Ohio, 508.

In *Homamond* v. *McGlaughon*, Taylor's R. 136, cited in a note in 6 Cowen, 547, the Court say, " when a deed, patent, or grant, describes a boundary from a certain point *down a river, creek, or the like*, mentioning also course and distance, should the latter be found not to agree with the course of the river, &c., it ought to be disregarded, and the river considered the true boundary."

In *Jackson* v. *Louw*, 12 Johns. 252, the Court say, where the call in the deed was from a point on the creek, thence *up the same*, those words necessarily imply that it is to follow the creek, according to it turnings and windings.

Nor is it material that a monument on the river should be specifically named in the deed. It is sufficient, if it be made to appear that the monuments referred to are, in fact, *on* the river.

There are still other parts of the description in the deed that throw additional light upon its construction; such as the words, " from said rock first mentioned, and from the stake and stones, running back *from the river*, fifty rods wide, in parallel lines, south-west so far as to include one hundred acres," thus strongly indicating the river as one of the boundary lines of the lot.

From these considerations, we think it is apparent that the

parties understood that one end of the lot was bounded *on* the river. If it were a fresh water stream, according to the rule laid down in *Lunt* v. *Holland*, 14 Mass. 149, the land conveyed would extend to the centre or thread of the main channel of the stream.

But this is a navigable river in which the tide ebbs and flows, and the question is raised whether the grant extends to low water mark, or is restricted to the bank of the river, at high water mark.

By the common law all that portion of land, on tide waters, between high water mark and low water mark, technically known as the "shore," originally belonged to the crown, and was held in trust by the King for public uses, and was not the subject of private property without a special patent or grant. *Hale's de jure Maris*, c. 4; *Storer* v. *Freeman*, 6 Mass. 437; *Commonwealth* v. *Alger*, 7 Cush. 53.

But by the ordinance of 1641, Colony Laws, c. 63, § 3, p. 148, "It is declared that in all creeks, coves and other places about and upon salt water, where the sea ebbs and flows, the proprietor, on land adjoining, shall have propriety to the low water mark, when the sea doth not ebb above a hundred rods, and not more wheresoever it ebbs further: provided, that such proprietor shall not by this liberty have power to stop or hinder the passage of boats or other vessels, in or through the sea, creeks, or coves, to other men's houses or lands."

This ordinance has been held both in Massachusetts and this State, in a series of judicial decisions, to have superseded the common law, applicable to the proprietorship of the "shore," on tide waters, and to have vested an absolute title thereto in the proprietors of the adjoining upland, subject only to the limitations and qualifications contained in the proviso to the ordinance. *Lapish* v. *Bangor Bank*, 8 Maine, 85; *Winslow* v. *Patten*, 34 Maine, 25; *Commonwealth* v. *Alger*, 7 Cush. 53.

By the application of these rules of construction and principles of law, it follows that the deeds, from the proprietors to Bohannan, and from Bohannan to Robbins, conveyed not

only the upland, but also the flats, in front of and adjoining the same, to the extent of one hundred rods from high water mark, if they extended so far.

On the 3d day of April, 1797, Robbins, the grantee in the deed from Bohannan, re-conveys to his grantor, the northerly half of said lot of land by the following words of description; to wit, "all my right, title and estate in the northerly moiety or half of the hundred acre lot on which the said Bohannan now lives, and bounded on said river; the half part hereby conveyed is bounded as follows; beginning on the bank of said river, at high water mark, on the line dividing the premises from the lot on which David Ferrol lived, and commonly called the Ferrol lot, and thence running on the bank of said river, on high water mark, twenty-five rods, and from thence, and the bound first mentioned, extending back by parallel lines one mile, according to the courses by which said land was conveyed to said Bohannan, so as to include fifty acres, and I, the said Robbins, do hereby covenant with the said Bohannan, that the premises are as free from all incumbrances as when conveyed by him to me."

There can be no doubt as to the identity of the lot of land conveyed by this deed. It is the northerly half of the same hundred acres which Bohannan had conveyed to Robbins by his deed of November 10, 1796.

The plaintiff contends that by this conveyance Bohannan was bounded by, and restricted to high water mark; and that the upland only passed by this deed.

The owner of upland, to which flats adjoin, may sell the upland without the flats, or the flats without the upland, or both together. *Deering* v. *Long Wharf*, 25 Maine, 50. The defendant contends that both passed by this deed from Robbins.

The description in the deed is not entirely consistent with itself. The general descriptive terms are, "all my right, title and estate, in the northerly moiety or half of the hundred acre lot on which said Bohannan now lives, and bounded on said river." We have seen that Robbins owned not only the

upland, but by operation of law, his title extended to and included the flats adjoining as part of his lot. Had the description stopped here, there could have been no doubt as to the true construction of the deed.

But it is contended that these general terms in the description are limited and controlled by the restrictive words which follow; "thence running on the bank of said river at high water mark," so that the grant cannot extend below that point.

The old books say if there be two clauses or parts of a deed, repugnant the one to the other, that the first shall be received, and the latter rejected, unless there be some special reason to the contrary. Am. Jurist, vol. 23, p. 279.

The first deed and the last will shall operate, is the ancient maxim. Plow. 541; Shep. Touch. 88.

Subsequent words shall not defeat precedent ones, if by construction they may stand together. But where there are two clauses in a deed, of which the latter is contradictory to the former, then the former shall stand. Cruise's Dig. Title Deed, c. 20, § 8.

These, however, are technical rules of construction, which were adopted, as declared by Lord MANSFIELD, "for want of a better reason," and are not entitled to much consideration, and should never be resorted to for purposes of construction unless difficulties are presented which cannot be resolved by more satisfactory rules. In modern times, they have given way to the more sensible rule of construction, which is in all cases to give effect to the intention of the parties if practicable, when no principle of law is thereby violated. This intention is to be ascertained by taking into consideration all the provisions of the deed, as well as the situation of the parties to it.

Robbins had purchased the whole lot of Bohannan; it contained one hundred acres; was fifty rods wide, and necessarily extended one mile from the river, and though not bounded in terms by high water mark, he was bounded by monuments which in fact stood substantially at high water mark. His

title to the flats accrued to him only by the force of this deed.

He conveyed all his *right, title* and *estate* to the northerly half of the lot; the tract conveyed was twenty-five rods wide, just half the width of the whole lot; it contained fifty acres; its western boundary was the same distance from the river as the western line of the original lot, and though bounded on the river at high water mark, these bounds were at the same point on the face of the earth, as were the monuments in the deed from Bohannan.

Whatever is expressly granted, or covenanted, or promised, cannot be restricted or diminished by subsequent provisions or restrictions; but general or doubtful clauses precedent, may be explained by subsequent words and clauses, not repugnant or contradictory to the express grant, covenant, or promise. *Cutler* v. *Tufts,* 3 Pick. 272; *Willard* v. *Moulton,* 4 Maine, 14.

If a deed may operate in two ways, the one of which is consistent with the intent of the parties and the other repugnant thereto, it will be so construed as to give effect to the intention indicated by the whole instrument. *Sally* v. *Forbes,* 4 Moore, 448. Thus if I have in D, black acre, white acre and green acre, and I grant you all my lands in D, that is to say, black acre and white acre, yet green acre shall pass. *Stukeley* v *Butler,* Hale, 172.

When one, being the owner of three parcels of land described in a certain deed, conveying them to him, made a deed of conveyance of "three parcels or lots situated in P. and bounded as follows, to wit; the first lot beginning at, &c. (setting forth the boundaries of this lot only,) being the same which was conveyed to me by deed," &c., referring to the deed describing the three lots, it was held, that the deed conveyed all these parcels, and that to restrict it to one would be giving it an effect far short of what the words required. *Child* v. *Ficket,* 4 Maine, 471.

That all doubtful words and provisions are to be construed most strongly against the grantor, is an ancient principle of

the common law, which is recognized as a sound rule of construction by modern jurists.

It is quite probable that neither party fully understood the precise nature and extent of their rights in the flats, at the time the several conveyances referred to were made. But from the contemporaneous and subsequent acts of the parties, as well as from the language of the deeds, we think it satisfactorily appears that each party understood, at the time the several conveyances were made by them, that they parted with all the rights they then had in the flats adjoining the uplands described in their deeds, and that this appears as fully, to say the least, in the deed from Robbins to Bohannan, as in the one by which Robbins obtained his title. Such being the fact, no interest remained in him which could descend to the plaintiff's grantor, and consequently the plaintiff has no title to the premises in dispute.

A nonsuit is therefore to be entered.

SHEPLEY, C. J., and TENNEY, HATHAWAY and APPLETON, J. J., concurred.