## SUPREME COURT.

### Apollos R. Wetmore and others agt. George Law, executor, &c., and others.

Where *facts* arising *after judgment,* or after the time has passed, before judgment, in which the party can avail himself of them in the action, are of such a nature that the judgment ought not to be executed, then resort may be had *by motion* to the court to vacate or stay the judgment.

Where premises are described as bounded *generally on or by a street or highway, or stream* of water, not navigable, this description, unexplained, carries the boundary to the *center* of the street or highway, or stream of water. (*See to the same effect, People agt. Law, ante, p.* 109.)

But where the premises are described as bounded " beginning at the corner formed by the intersection of the *Easterly line* of Greenwich street with the *Northerly line* of Chambers street, then follows a line Southeasterly along the line of Chambers street," &c.; such a description bounds the premises by the *Easterly* and *Northerly lines* of the streets, and does not carry the owner to the center of the streets.

Therefore, the owner whose right extends to the center of the street is entitled to compensation where the street is to be taken for the purposes of a railroad; but the owner whose premises are bounded by the line of the street is not so entitled. (*See People agt. Law, supra.*)

Whether an act of the legislature can be impeached by showing by affidavits unfair and improper practices by parties in procuring its passage, or whether it can be impeached *at all,* other than by a direct proceeding for that purpose, in analogy to the mode of impeaching a patent—*quere?*

*New York Special Term, November,* 1860.
Motion to vacate judgment,

W. ALLEN BUTLER, JOHN VAN BUREN and W. CURTIS
NOYES, *for plaintiffs.*

CHA'S O'CONOR, CLAUDIUS L. MONELL and H. W. ROB.
INSON, *for defendants.*

HOGEBOOM, Justice.   This is a motion by defendants to
vacate or set aside so much of the judgment entered in this
action, pursuant to the direction of Judge DAVIES, as
enjoins the defendants from entering upon those portions
of Greenwich and Washington streets, in New York, which
lie between Reade street and Cortlandt street, for the pur-
pose of laying or establishing a railroad thereon, and from
digging up or subverting the soil for that purpose, or oth-
erwise encumbering or obstructing the free and common
use of said streets.

The motion is founded principally upon an act of the
legislature, passed on the 14th day of April, 1860, purport-
ing to confirm a certain resolution of the common council,
granting permission to the defendants, or some of them,
to lay down and establish a railroad in said streets ; and
said act itself also purporting to authorize the defendants,
or some of them, to lay down and establish said railroad
therein.

This act was passed *since* the judgment in the above
action was entered, which granted the injunction com-
plained of.   This injunction was granted, as appears by
the opinion and decision of the court, solely upon the
ground that the resolution of the common council afore-
said was not legally passed—both boards of the common
council not having passed the same during the same year ;
and hence, that, under the decision of this court, in *Wet-
more* agt. *Story*, (22 *Barb.*, 414,) it was ineffectual ; and
that the act of the legislature, of April 4, 1854, exempting
railroads, partially constructed, from the operation of that
act, and authorizing their completion, did not embrace rail-
roads partially constructed without legal authority.   The

requisite legislative authority to construct this road having been conferred, as claimed by the defendants,, by the act of April 14, 1860, and thus the sole ground removed, upon which Justice DAVIES rested the judgment and injunction in question, the defendants make this motion before the special term to be relieved from the operation thereof.

1. The first objection taken to the motion is, that relief cannot be granted in this summary way against a solemn judgment of the court—that resort should be had to the writ of *audita querula*—and a formal issue made between the parties to test the truth of the matters alleged, and their legal bearing upon the judgment.

But I think the modern practice authorizes a resort to this motion—especially if the facts are undisputed. (*Baker* agt. *Judges of Ulster*, 4 *John.*, 191 ; *Davis* agt. *Sturtevant*, 4 *Duer*, 148 ; *Clark* agt. *Rowling*, 3 *Comst.*, 221, 222, 226, 227.) It has been frequently applied for the benefit of a party who has obtained a bankrupt's discharge, and who has had no opportunity, before judgment, to avail himself of that defence. (*Lester* agt. *Mundell*, 1 *Bos. & Pul.*, 227 ; *Baker* agt. *Judges of Ulster*, 4 *John.*, 191 ; *Thompson* agt. *Hewitt*, 6 *Hill*, 254 ; *Clark* agt. *Rowling*, 3 *Comst.*, 226, 227.) And if it be clear upon the facts presented, which are usually, perhaps always, facts arising *after judgment*, or after the time has passed, before judgment, in which the party can avail himself of them in the action—if it be clear that the new matter is of such a nature that the judgment ought not to be executed, then resort may be had to this summary proceeding, or the party may, at his peril, take the risk of disobeying the positive directions of this court, contained in the judgment itself. Thus, in the celebrated case of the *Wheeling Bridge*, which had been declared a nuisance, and its construction enjoined, and removal required by the supreme court of the United States, the bridge, after judgment, was legalized by an act of congress, establishing a post road over it, and thereafter the parties who were

enjoined, having resumed its construction, were proceeded against for a contempt for violating the injunction of the court, but the court refused to punish them, upon the ground that the subsequent action of congress legalized the defendants' proceedings, and in effect nullified the judgment of the court. (*Pennsylvania* agt. *Wheeling Bridge Co.*, 18 *How. U. S. Rep.*, 421.)

But it is the safer and certainly the more respectful course, first to submit the question to the court itself, and obtain its sanction to what might otherwise be regarded as a disrespect of its authority. The defendants were, therefore, justifiable in presenting the question in this form.

And if the ground on which Justice DAVIES placed his decision, to wit, the absence of any legal sanction either by the municipal or state authorities to the construction of the road, has been removed by the act of April 14, 1860, the defendants certainly present a *prima facie* case for the application of the rule.

I have elsewhere expressed the opinion that the statute last referred to was a legal and constitutional exercise of legislative power, except in a particular contingency as to the corporation of New York—that it was intended to confirm, and had the effect to confirm and make valid the resolution of the common council, whose validity is impeached, and to confer by original authority the right to make and construct the railroad in question. And if Judge DAVIES was right in the conclusion to which he arrived, that the plaintiffs did not establish a title to the land in front of their lots occupied by Greenwich and Washington streets, to the center of the street, but only to the exterior line thereof, then the defendants' motion ought to be granted, for the judgment has no longer any solid foundation on which to rest.

But, after the best consideration which I have been able to give to this case, I have come to the conclusion that the plaintiffs have title to the lots mentioned in their complaint,

at least to some of them, to the *center* of the street. I came to that conclusion after examination in the case of *The People* and *Earl and Bartholomew* against the same defendants, and the cases appear to be in that respect nearly similar. According to the case in this action, the plaintiff Wetmore derives title under a deed from the corporation of New York to Mangle Minthorne, dated April 20th, 1785. The premises therein described are bounded " Westerly *by a street* or wharf, running along Hudson's river." This afterwards appears to be Washington street. Mangle Minthorne's executors afterwards conveyed the premises to Apollos R. Wetmore and others by deed, dated February 23d, 1825, in which the premises are described as bounded " Westerly and Northerly in front *on Washington street.*" Two subsequent deeds (the last of which vests the whole premises in the plaintiff, Apollos R. Wetmore, alone,) dated on the 30th of October, 1834, and 1st February, 1843, describe the premises as bounded " Westerly in front by *Washington street.*"

As I understand the law, this description, bounding premises *generally on or by a street, or highway, or stream* of water, not navigable, unexplained, carries the boundary to the *center* of the street or highway, or stream of water. (*Hammond* agt. *McLachlan*, 1 *Sand.*, 323 ; *Herring* agt. *Fisher*, 1 *Sand.*, 344 ; *Jackson* agt. *Low*, 12 *John.*, 252 ; *Jackson* agt. *Hathaway*, 15 *John.*, 447 ; *Adams* agt. *Saratoga & Washington Railroad*, 11 *Barb.*, 414 ; *Adams* agt. *Rivers*, 11 *Barb.*, 390 ; *Ex parte Jennings*, 5 *Cow.*, 518 ; *People* agt. *Seymour*, 6 *Cow.*, 579 ; *Canal Appraisers* agt. *People*, 17 *Wend.*, 571 ; *Commissioners of Canal Fund* agt. *Kempshall*, 26 *Wend.*, 404 ; *Luce* agt. *Carley*, 24 *Wend.*, 451 ; *Demyer* agt. *Legg*, 18 *Barb.*, 14.)

On the other hand, the premises of the plaintiffs R. L. & A. Stuart, are described in deeds to them from the Trustees of Trinity Church, dated January 14th, 1843, and June 18th, 1849, as " beginning at the corner formed by the

intersection of the *Easterly* line of Greenwich street with the *Northerly line* of Chambers street," then follows a line Southeasterly along the line of Chambers street, then a line *perpendicular* to Chambers street, then a line " parallel to that of Chambers street, one hundred and nine feet to the said *Easterly line of Greenwich street,* and thence South-wardly along the same seventy-nine feet and eight inches to the place of beginning." Other premises are conveyed to the same parties at the corner of Greenwich street and Reade street, by a similar description, substituting Reade street for Chambers street.

I think this description bounds the plaintiffs *Stuart* by the *Easterly line* of Greenwich street, and does not carry them to the centre of the street. (*Child* agt. *Starr*, 4 *Hill*, 369 ; *Kingmans* agt. *Sparrow*, 12 *Barb.*, 201; *Halsey* agt. *McCormick*, 4 *Ker.*, 296 ; *Jones* agt. *Carman*, 2 *Sand. S. C. R.*, 234.)

I have not found in the case the description of the pre-mises of Howell Hoppock, and am not therefore in a condi-tion to express an opinion whether those premises extend to the center of Washington street, as claimed in the com-plaint, or not.

If I am right in my construction of the deed to Wetmore, he owns to the center of Washington street, subject to the public easement, and therefore, as I have stated in the case of *The People* agt. *Law and others*, has a private property in the street, for which, by the act in question and by the constitution and by fundamental principles of right, he is entitled to compensation, and, by the practice in equity cases, to an injunction until this compensation is made. It would not, therefore, be proper to vacate the judgment as to him. So far as appears, the other plaintiffs have not a right of property, and are not entitled to compensation. But it cannot be a matter of much practical importance to the defendants to have the injunction dissolved and the judgment vacated as to the Stuarts and Hoppock, if it is

retained, as I think it must be, to Wetmore; the great object being, as I suppose, to test the question whether an injunction properly lies to protect any parties whatever owning property on or along the line of these streets. I think it more appropriate, therefore, to preserve the injunction and judgment intact as to all the plaintiffs, especially as the whole subject will speedily receive a more deliberate and careful review at the general term, upon the appeal to that tribunal.

On that appeal it will be competent, I think, for the court to consider the whole question as to all the plaintiffs, whether their title extends to the center of the streets, and, if satisfied that it does, to affirm the judgment of Judge DAVIES, notwithstanding they shall be of opinion that, upon the facts found by him, the injunction could not be sustained.

With a view to impeach the validity of the act of 1860, and to overcome its force, the plaintiffs in opposition to the motion read an affidavit, for the purpose of showing unfair practices on the part of Mr. Law and other parties in procuring the passage of that act. The defendants, regarding portions of this affidavit as scandalous and impertinent, have moved to expunge the same. Although I am strongly inclined to think the matter thus presented as wholly irrelevant and out of place on this motion, I have not thought it necessary to criticise it with so much care as to determine whether it should be expunged, particularly as, in all probability, my decision upon the whole question will be subjected to review upon appeal. I therefore deny the motion to expunge. As to the merits of this part of the application, I am of opinion that there are not facts enough stated or established to justify the court in imputing unfairness or fraud, especially to the extent of disregarding the act as void for that reason. Nor should I do so without giving the defendants an opportunity to rebut these statements, if material. Nor am I satisfied that an

act of the legislature can be thus impeached for fraud, not appearing upon its face, (*Fletcher* agt. *Peck*, 6 *Cranch*, 87,) or that it can be impeached otherwise, *if at all*, than by a direct proceeding for that purpose, in analogy to the mode of impeaching a patent. (*People* agt. *Mauran*, 5 *Denio*, 389 ; *People* agt. *Livingston*, 8 *Barb.*, 253.) I have, therefore, in disposing of the case, laid no stress upon this portion of the plaintiffs' affidavits.

The defendants' motion must be denied, but with liberty to renew the same, if they shall be so advised, after the determination of the defendants' appeal from the judgment in question, or after they shall have consummated the necessary measures for making compensation to the plaintiffs under the act of 1860.

Ten dollars costs of making and opposing the motion may abide the event of the action.