## THE EMERGENCY HOSPITAL OF EASTON vs. JAMES A. STEVENS.

*Appealable Order—Violation of Injunction—Change of Conditions—Contempt.*

Where, to a petition for an attachment and punishment for contempt in violating an injunction, an answer was filed, and a demurrer to such answer was sustained by an order which also continued the injunction, but reserved the question of punishment until the hearing of a motion to dissolve the injunction, the order was, in spite of such reservation, a final order for the purpose of appeal. p. 164

One in contempt for violating an injunction must, to maintain his standing in a court of equity, take such further proceedings as may be proper to purge himself of the contempt.
p. 164

An appeal from an order adjudicating a party in contempt will not be dismissed on the ground that the alleged contempt was criminal in its nature and the order was consequently not appealable, if this objection to the appeal is not asserted by the appellee in the Court of Appeals. pp. 164, 165

The violation of an injunction cannot be excused on the ground that the party guilty of such violation had by its own act so changed the conditions as to make the injunction no longer applicable. pp. 165-168

Where changes in the relations of the parties, or in the conditions upon which an injunction is based, occur after the final decree therefor, rendering its further operation unreasonable, unjust, oppressive or inequitable, the court which passed the decree has the right to dissolve it. p. 166

While as a general principle a final enrolled decree will not be opened to relitigate any question dealt with therein by the court which passed it, nevertheless where events occur after a decree for an injunction which necessarily make the continuance thereof an absurdity, or unjust and oppressive, the court which granted it may in a proper proceeding change its decree to conform to the changed conditions. pp. 166-168

*Decided June 20th, 1924.*

Appeal from the Circuit Court for Talbot County, In Equity (WICKES and KEATING, JJ.).

Bill by James A. Stevens against the Emergency Hospital of Easton. From a decree on demurrer to the respondent's answer to a petition seeking to have it punished for contempt in violating an injunction, it appeals. Affirmed.

The cause was argued before THOMAS, PATTISON, URNER, OFFUT, DIGGES, and BOND, JJ.

*Charles McHenry Howard* and *J. Wallace Bryan*, with whom were *T. Hughlett Henry* and *Seth, Shehan & Marshall* on the brief, for the appellant.

*Murray Lloyd Goldsborough*, with whom was *Alfred L. Tharp* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This appeal is the second chapter in an unfortunate controversy between Dr. James A. Stevens, a physician and surgeon in good standing practicing his profession in Talbot County, Maryland, and The Emergency Hospital of Easton, a corporation organized and maintained to afford the inhabitants of that part of the State necessary hospital facilities for surgical operations and the treatment of disease.

The proceeding in which it is taken was initiated by the appellee's filing in the Circuit Court for Talbot County a bill of complaint against the appellant in which he charged that it refused to permit him to perform surgical operations in the hospital, which under its charter, constitution and by-laws he was entitled to perform, and in that bill he asked that court to restrain the defendant from interfering with or hindering him in the performance of such surgical operations in said hospital as he might deem expedient or necessary. In the answer to that bill the defendant admitted that it had refused permission to the complainant to operate in said hospital but said that he could not complain of that

action because it had, by a meeting duly warned of members of the corporation, repealed and amended those provisions of the constitution and by-laws upon which he relied, and that under the amended constitution and by-laws he was not entitled to operate in the hospital without the permission of its directors and staff, which he had not obtained. The lower court in that case sustained that position and dismissed the bill and from that decree an appeal was taken to this Court, which was decided in an opinion filed by Judge Thomas (142 Md. 526), in which the decree appealed from was reversed and the cause remanded in order that a perpetual injunction might issue as prayed in the bill. The basis of that decision was that the amendments upon which the defendant relied had not been validly made and were void, because proper notice had not been given as required by the Code of P. G. L. of Md. The case was remanded and on February 21st, 1923, an injunction issued as directed in the following form:

> "That The Emergency Hospital of Easton, its officers, directors, agents, superintendent, nurses, servants, and employees, they and each of them, are hereby enjoined and perpetually restrained from interfering with or failing to aid and assist Dr. James A. Stevens, the plaintiff, in the surgical treatment of his patients in the said hospital as fully as aid and assistance is given to any other physician or surgeon operating upon or engaged in the treatment of patients in said hospital, and from interfering with or discriminating against any patient of said James A. Stevens presenting himself or herself for the medical or surgical treatment of said James A. Stevens at the said hospital."

On or about September 6th, 1923, the appellee filed in the cause a petition against the appellant in which he prayed that it be attached and punished for violation of the injunction order referred to above. In support of that prayer the petitioner, after setting out such of the facts to which we have referred as were material, charged:

"That nevertheless, on or about the 26th day of July, 1923, one Olga Moberly, acting superintendent of the said hospital, alleging that she acted under instructions of the directors of the said hospital, did refuse and deny to * * * the said James A. Stevens the use of the operating room equipment and facilities of the said Emergency Hospital of Easton as he the said James A. Stevens was preparing to operate upon a private patient who was then and there ill and requiring his professional services, in defiance and contempt of the said injunction of this Honorable Court. * * * That" he "was thereby prevented from operating upon his said private patient and has not yet been permitted so to operate to his, your orator's, great damage and to the great danger of his said private patients now requiring his professional treatment to save them from grievous illness and possibly death. That * * * the said James A. Stevens has other private patients who are urgently in need of his professional treatment in the said hospital, and that he and they will suffer great loss and damage if the said injunction of this Honorable Court be not forthwith enforced."

Upon that petition a *nisi* order was passed and by way of cause the appellant, on September 13th, 1923, filed an answer, in which it averred that subsequent to the filing of the decree for a perpetual injunction it had validly and regularly amended its constitution and by-laws and that under its constitution and by-laws as thus amended the appellee had no right to operate in said hospital without the approval and consent of the hospital staff, which he had not obtained. It further alleged:

"That The Emergency Hospital of Easton admits that on or about the 26th day of July, 1923, one Olga Moberly, acting superintendent of said hospital, by and under instructions of the directors of said hospital, did refuse and deny to the said James A. Stevens the use of the operating room, equipment and facilities of said Emergency Hospital of Easton, in accordance with the notice mailed to Dr. James A.

Stevens and all other physicians practicing in the town of Easton, advising them and him of the amendment of the constitution and by-laws of said hospital, as mentioned in the first paragraph of this answer; that said constitution and by-laws govern the conduct of all physicians and surgeons using said hospital, with the same force and effect, and in no way discriminate against the said Dr. James A. Stevens, and this defendant denies that it has disobeyed any order of this court, and denies that it is in contempt of the injunction of this Honorable Court or of any order or ruling thereof, but has acted solely in accordance with the amended constitution and by-laws and in strict accord with its legal rights. * * * That this defendant admits that the said James A. Stevens was prevented from operating at the time aforesaid because he had not complied with the said amended constitution and by-laws and the regulations adopted pursuant thereto. * * * And this defendant, further answering, says that the said defendant has never denied the said James A. Stevens the right to treat medically any private patient; and, further answering, says that the said James A. Stevens has made no application to the surgical staff for permission to operate in said hospital, as provided by the said amended constitution and by-laws and the regulations passed in pursuance thereof, of which the said James A. Stevens had full notice."

The particular by-law upon which the appellant's defense rests, referred to in the answer, was adopted May 29th, 1923, a little over three months after the decree restraining the appellant from interfering with the appellee in the performance of surgical operations in the hospital had been passed and is in the following form:

"Physicians and Surgeons.—Any physician in good standing can practice medicine, exclusive of surgery, in this hospital; and any surgeon in good standing may operate in this hospital with the approval of the staff and the board of directors."

On October 11th, 1923, the appellee demurred to that answer and on the same day the appellant asked and was

granted leave to move for a dissolution of the injunction but, before any such motion was filed, the court also on October 11th sustained the demurrer to the respondent's answer in the contempt proceeding and continued the injunction, but reserved the question of punishment for the contempt "until the hearing of the motion to dissolve said injunction, permission to file said motion having been granted to the defendant," and from that order the respondent appealed.

The first question presented for consideration is brought up by the appellee's motion to dismiss the appeal on the ground that the order appealed from is not final. That contention cannot in our opinion be maintained, because the order is so far final that it definitely and conclusively determines (1) that the defence set up by the respondent to the petition is bad in law and insufficient, and (2) that the respondent is guilty of the contempt charged against it, reserving only the question of punishment. But that reservation could not take away from the order the attribute of finality incident to the determination of the respondent's right to present the facts upon which it relied as a defence, and of the issue as to whether it was guilty of contempt, because certain results adversely affecting the appellant's interest immediately flowed from that finding. For instance the question of its guilt or innocence of the alleged contempt was no longer open. Being in contempt it was obliged, in order to maintain its standing in a court of equity, to take such further proceedings as might be proper to purge itself of the contempt. *Gilbert* v. *Arnold,* 30 Md. 29; *Hendrickson* v. *Standard Oil Co.,* 126 Md. 577; *Stockham* v. *Knollenberg,* 133 Md. 341.

It was elaborately argued for the appellant that the alleged contempt involved here is civil in its nature, affecting only the rights of litigants and that therefore the court's action in reference to it is reviewable on appeal, and distinguished from criminal contempts, which menace the dignity and authority of the courts themselves, in which the act of the court in dealing with them is as a general rule summary and discretionary and not reviewable.

Inasmuch as that objection was not made in this Court by the appellee we will disregard it, although in thus dealing with it we are not to be understood as in any way modifying the rule stated in *Kelly* v. *Montebello Park Co.,* 141 Md. 194, nor as deciding that the appeal would have been entertained over seasonable objection. The motion to dismiss for the reason stated is overruled.

The next and indeed the only other question in the case is whether the facts set up in the defendant's answer presented a sufficient defence to the charge that it had deliberately and wilfully violated the court's order and was thereby guilty of contempt of that court. It is admitted that the defendant wilfully and deliberately did the very thing which the court in its decree expressly enjoined and prohibited it from doing, and there can be no question but that such conduct was in flagrant and open contempt of the injunction of the court from which it issued, unless excused or explained by some act or event which justified such extraordinary conduct. But the only excuse offered by the appellant was that it, by its own act, had, after the appellees right to the injunction had been established by this Court, so changed the conditions upon which that decision rested that the injunction no longer controlled its conduct. That is to say, by way of excuse it submitted the proposition that it was clothed with the power of determining for itself when it should obey and when it should not obey an explicit and peremptory order of a court of competent jurisdiction passed in a cause to which it was a party. In support of that proposition it contends that in no other way could it exercise rights which had accrued to it through changes in the conditions upon which the decree was based occurring after its passage which, if they did not nullify the authority of the injunction as a continuing command, at least made its continued operation inequitable and unjust. And as a corollary of that proposition it contends that if its interpretation of the facts relied upon and the legal consequences flowing therefrom, as nullifying the continuing authority of the injunction, is correct, that it should be exonerated from

the charge of contempt and that only in the event that such interpretation is erroneous can it be deemed guilty of the contempt charged.

That contention assumes that the court granting the injunction had no power to rescind or modify its final decree after it had become enrolled, no matter what changes had occurred in the conditions or the relations of the parties after the decree.   There is obviously no force in these contentions.

Certainly, where changes in the relations of the parties or the conditions upon which it is based, occurring after a final decree of the nature of that passed in this case, render its further operation unreasonable, unjust, oppressive or inequitable, the court which passed it necessarily must have the right to dissolve it, and it is wholly unnecessary to resort to so disorderly a proceeding as the commission of a contempt to secure relief.

It is true as a general principle that a final enrolled decree will not be opened to relitigate any question dealt with in it by the court passing such a decree, but that rule does not mean that, where events have occurred since the decree which would necessarily make the continuance of the injunction an absurdity, or unjust or oppressive, that the court which granted it could not in a proper proceeding change its decree to conform to the changed conditions.   By way of illustration, if one were enjoined from obstructing a way appurtenant to land, and he afterwards acquired the land and its appurtenances, it cannot be supposed that the court which granted the injunction could not under such circumstances open the decree and dissolve it.   And such indeed has been the view heretofore expressed by this very Court.   In *Whitlock Cordage Co. v. Hine*, 125 Md. 102, Chief Judge Boyd, in discussing the principle underlying that power, said:  "It must be confessed that it is not always easy to determine under the authorities when a petition to rescind an order or set aside a decree, which has become enrolled, should be entertained.   The general rule undoubtedly is that

a decree or decretal order, after enrollment, can be revised
or annulled only by a bill of review or original bill and not
by a petition, but there are exceptions to the rule, equally
well established as the rule itself, which are generally classi-
fied as follows: (1) In cases not heard upon the merits.
(2) Where the circumstances are such as to satisfy the Court
that the decree should be set aside, and (3) where the decree
was entered by mistake or surprise. As this question not
infrequently arises, it will perhaps be well to recall what
has been decided in this State, even at the risk of making
this opinion longer than desirable." That case, and also
the cases referred to in the very able and exhaustive review in
the opinion of the cases in this State dealing with the ques-
tion, turned upon the questions of notice and surprise, but
the principle involved in the statement quoted above is sup-
ported we believe by the general weight of authority. In 32
*C. J.* 389 it is said: "A final decree awarding an injunction
will not be opened except on good cause shown. However,
the court which rendered a decree for an injunction may
without even any statutory authority to do so, open, vacate,
or modify the same where the circumstances and situation
of the parties are shown to have so changed as to make it
just and equitable to do so." In dealing with the same ques-
tion, it was said in *Scudder* v. *Kilfoil,* 57 N. J. Eq. 171:
"It is perceived that the petition sets up a matter occurring
since the original decree, as a reason for vacating the decree
or restraining the writ of injunction. I had some doubt
whether this matter could be called to the attention of the
court except by a bill in the nature of a bill of review, but
am inclined to think that it may be presented by petition.
It is not an application to change the decree originally
entered, but is analogous to an application to stay process
isued to enforce a decree or judgment, where a judgment has
been paid or performance of a decree has been waived, or any
other ground has arisen by which the enforcement of it would
be inequitable and oppressive. In the case of *Spann* v.
*Spann,* 2 Hill, Eq. 152, upon a motion to set aside an attach-

ment issued to enforce a decree, which motion the chancellor had granted, the judge who wrote the opinion for the court of appeals said: 'It is clear that the courts, both at law and equity, have the power, and duly exercise it, of suspending the execution of even final process, on account of subsequent matter, which would render the execution of it oppressive or inequitable.' " To the same effect is *Colstrum* v. *Minn. & St. L. Ry. Co.,* 33 Minn. 517, where it was said: "As to the objection that the injunction should not have been perpetual because it will prevent defendant from acquiring a right of way by condemnation proceedings, there is, in the first place, nothing in this case to show that defendant desires any such condemnation, and, in the second place, if necessary for that purpose, the injunction can be modified upon a proper showing, as was done in *Weaver* v. *Boom Co.,* 30 Minn. 477; S. C. 16 N. W. Rep. 269." See also *Hodges* v. *Snyder,* 45 S. D. 149; *Lowe* v. *Prospect Hill Cemetery Co.,* 75 Neb. 85; *Weaver* v. *Mississippi & Rum River B. Co.,* 30 Minn. 477. There is nothing in the case of *Pennsylvania* v. *Wheeling Bridge Co.,* 18 Howard, 421, where a federal statute superseding a decree of the Supreme Court passed in the exercise of its original jurisdiction was held to be a valid defence to a motion for an attachment for violating the injunction granted by the decree, at all in conflict with this view. First, because the decision in that case was very carefully limited to the facts involved there and did not purport to state a general rule, and second, the court there was dealing with the effect of a valid legislative act on a decree declaring the status of public not private rights. Or expressed in another way, the legislature, acting within the scope of its constitutional powers, had the authority in such a case as that to nullify that decree by taking away everything on which it rested. But even then it cannot be doubted that it would have been a better and a more orderly practice to have asked the court to open the decree and dissolve the injunction, and indeed four of the justices who sat in that case dissented because they thought an attachment for contempt should have issued.

From what has been said it is apparent that in our opinion the order appealed from must be affirmed. In reaching this conclusion we have treated the appeal as presenting a purely procedural question and have not attempted to discuss the substantial question which must ultimately control the litigation, *i. e.,* whether the appellant has the power to regulate and control the management and operation of its own hospital, because, as recognized by counsel, that question is not before us, and the record does not contain facts sufficient to enable us to consider it.

The decree appealed from will therefore be affirmed and the case remanded in order that further proceedings may be had therein in conformity with the views expressed in this opinion, and especially that application may be made to the lower court to open the decree for a perpetual injunction passed therein and to rescind the same.

> *Decree affirmed, with costs to appellee, "and the case remanded in order that further proceedings may be had therein, in conformity with the views expressed in this opinion, and especially that application may be made to the lower court to open the decree for a perpetual injunction passed therein and to rescind the same."*