## Tamagno *v.* Waiters and Waitresses Union, Appellant.

Argued January 13, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and ARNOLD, JJ.

*Richard H. Markowitz,* with him *Louis H. Wilderman,* for appellants.

*I. Herbert Rothenberg,* for intervenors, appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, April 22, 1953:

In December, 1950, the court below issued a preliminary injunction and in June, 1951, a permanent injunction against the defendant Waiters and Waitresses Union, Local No. 301, an unincorporated association, enjoining them from continuing a strike which they had commenced against the complainants, from picketing, whether peacefully or otherwise, the premises of the complainants, and from threatening, molesting, or assaulting the complainants or their employes. The complainants were Richard J. Tamagno and Frank M. Kitson, partners operating a restaurant. The court found as facts that the strike was called and the picketing prosecuted for the purpose of compelling the complainants to force their employes to join the defendant union. The court further found that the complainants employed 43 persons, only 11 of whom went out on strike, and that the union did not represent a majority of the complainants' employes. The court also found that the pickets harassed and threatened the complainants' customers, abused and derided the complainants' employes by hurling at them profane epithets, and maintained a closely knit picket line making it impossible for the employes to enter or leave the premises except by physically forcing their way through the line.

Ever since the preliminary decree was issued, more than 2 years ago, the injunction order has been obeyed by the defendants and the strike and the picketing were discontinued.

In September, 1951, six months after the entry of the final decree, the complainants sold their restaurant to two persons, Ralph Puppio and Jerry Dugan.

An appeal from the final decree was taken to this court by the defendants but they asked to have the record returned to the court below so that they might petition that court to dissolve the injunction because of

the change in the ownership of the restaurant. Accordingly we remitted the record with direction to the court below to consider the matter and make recommendation to this court. The record has been returned with a recommendation of the court below that the motion to dissolve the injunction be refused. Appellants state that they are now limiting the issue on this appeal to the sole question whether that motion should be granted.

There is, of course, no question but that a court of equity has the power to modify or vacate an injunctive decree previously granted by it if the circumstances and situation of the parties have so changed as to make it just and equitable to do so and if the court feels that the protection given to the complainant is no longer necessary: *Ladner v. Siegel (No. 4)*, 298 Pa. 487, 495, 496, 148 A. 699, 701. It was stated in that case (p. 497, A. p. 702) that "The modification of a decree in a preventive injunction is inherent in the court which granted it, and may be made . . . if, in its discretion judicially exercised, it believes the ends of justice would be served by a modification, . . . ." And, further, (p. 495, A. p. 701) that while an injunctive decree "is an adjudication of the facts and the law applicable thereto, it is none the less executory and continuing as to the purpose or object to be attained; . . . . It operates until vacated, modified or dissolved." And again, (p. 500, A. p. 703), that "A decree preventing [an injury to a property right] does not give to the complaining party a perpetual or vested right either in the remedy, the law governing the order or the effect of it. He is not entitled to the same measure of protection at all times and under all circumstances. A decree protecting a property right is given subject to the rules governing modification, suspension or dissolution of an injunction. The decree is an ambulatory

one and marches along with time affected by the nature of the proceeding." And it was said in *Milk Wagon Drivers Union of Chicago, Local 753, v. Meadowmoor Dairies, Inc.*, 312 U. S. 287, 298, that "The injunction which we sustain is 'permanent' only for the temporary period for which it may last. It is justified only by the violence that induced it and only so long as it counteracts a continuing intimidation. Familiar equity procedure assures opportunity for modifying or vacating an injunction when its continuance is no longer warranted."

Undoubtedly the mere fact that an illegal practice has been abandoned does not necessarily cause a controversy to become moot. The question always remains whether such practice is likely to be resumed and even though the defendant may give assurance that he will not err again it is for the court to say whether the complainant should be compelled to accept such an assurance instead of insisting upon the continuance of the injunctive relief which he has obtained. If, therefore, there were nothing more in the present case than that the defendants had, for these two years, obeyed the injunction entered against them, their mere assertion that they will not again commit the illegal acts from which they were enjoined would not compel the court to vacate its injunctive decree or even justify such action on its part. But here there are additional circumstances which alter the situation. The complainants have lost all possible interest in the injunction they obtained against the defendants, nor do they appear in these appellate proceedings. The purchasers of their business, Ralph Puppio and Jerry Dugan, wish to intervene and take over the benefit of the injunction but this obviously they cannot do. The injunction was entered in favor of the complainants personally; it was granted on the ground that defendants

were attempting to coerce them into forcing their employes to join the defendant union. It cannot be said —certainly it is not shown—that defendants, now or in the future, have any intention of transferring their illegal activities in that respect to the new purchasers of the business. The decree cannot be made the subject of an assignment to the latter or marked to their use. If hereafter defendants should attempt to bring against them the same kind of pressure they attempted to exert against the complainants the present owners can meet any such future contingency by initiating proceedings of their own setting up the new facts.

It seems that 16 of the original 43 employes of the complainants are still employed in the restaurant and these 16 wish to intervene in order to retain the injunction in force for their own protection. However, the injunction was granted originally for the sole reason that the picketing was illegal because its purpose was to coerce the employers into forcing their employes to join the defendant union. The employes were not a party to the action, and it would be an extremely forced and strained procedure to allow them now, two years later, to intervene in order to attempt to establish wholly independent rights of their own in this moribund injunction, especially as they are a mere remnant of the former employes, and their present right to work is not in any way challenged or impeded.

Because, therefore, of the lapse of time that has occurred since the strike was originally instituted, because it has long since ended, because there has been no picketing or threats of picketing by defendants for the past two years, because the purpose of the filing of the bill has been accomplished, because there is no longer any controversy between the complainants and the defendants, because the ownership of the business has changed hands, because the injunctive decree was

entered in favor of the complainants as individuals and not in favor of their business establishment generally whereby it would become automatically applicable for the use of any subsequent purchaser of the restaurant at any later time, and, finally, because the former employes now working for the new owners have no present standing to claim the benefit of the decree for themselves,—for all these reasons, we are of opinion that defendants are now entitled to have the injunction dissolved, and not to have it held over them forever as a continuing threat against any future assertion of their constitutional right peacefully to picket should new occasions arise to justify such action.

The record is remanded to the court below with direction to make absolute defendants' rule to show cause why the injunction entered by it on June 28, 1951, should not be dissolved. The parties to bear their respective costs.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

The basic error in the majority opinion lies, I believe, in its failure to recognize that the injunction in this case was issued not only to restrain in the employer's behalf a violation of the Pennsylvania Labor Relations Act, but also to protect the employees from being threatened, molested or assaulted by the defendants. The decree of the lower Court dated March 28, 1951, provides, inter alia, as follows: "That the respondents . . . are herewith . . . enjoined . . . from threatening, molesting or abusing, insulting, assaulting or advising, instructing or encouraging others to threaten, molest, abuse, insult or assault, the complainants, *their employees* . . .".

Just because persons are members of a union gives them no right to threaten or assault, as they did in

this case, their fellow Americans, even though the latter are not members of a union. These men and women, like all American citizens, are entitled to the protection of the law and of the Courts. This was not and is not a case, as the majority assert, merely for the advantage or protection of named employers; this injunction, we repeat, was issued, inter alia, to protect the employees from actual and threatened violence and they are entitled—as they request—to such continued protection.

Courts of Equity, for over a century, have enjoined threatened or actual violence and this power has always been sustained by the Supreme Court of the United States and by the Supreme Court of Pennsylvania: *Allen-Bradley Local v. Wisconsin E. R. Board,* 315 U. S. 740; *Milk Drivers Union v. Meadowmoor Co.,* 312 U. S. 287; *Westinghouse Electric Corp. v. United Electrical,* 353 Pa. 446, 46 A. 2d 16; *Carnegie-Illinois Steel Corp. v. U. S. W. of A.,* 353 Pa. 420, 45 A. 2d 857; see to the same effect: *N. L. R. B. v. Fansteel Corp.,* 306 U. S. 240.*

This was not and is not a case of peaceful picketing—peaceful picketing, if conducted in an orderly manner and for a lawful purpose, is lawful: *Wortex Mills v. Textile Workers,* 369 Pa. 359, 85 A. 2d 851.

The power of a Court to vacate or modify an injunctive decree and the circumstances of when it should do so, are well stated in *Ladner v. Siegel (No. 4),* 298 Pa. 487, 496, 148 A. 699: " 'The court which rendered a decree for an injunction may, . . . open, vacate or modify the same where the circumstances

---

* On the subject of protection of rights of employees cf. also: *Heasley v. Plasterers Assn.,* 324 Pa. 257, 260, 188 A. 206; *McMenamin v. Philadelphia Transportation Co.,* 356 Pa. 88, 51 A. 2d 702; *Erdman v. Mitchell,* 207 Pa. 79, 56 A. 327.

and situation of the parties are shown to have so changed as to make it just and equitable to do so' (32 C.J. 389), or where the law has changed: 32 C.J. 407; Wetmore v. Law (N.Y), 34 Barb. 515; Weaver v. Mississippi Boom Co., 30 Minn. 477, 16 N.W. 269; Larson v. Minn. Northwestern Elec. Ry. Co., 136 Minn. 423, 162 N.W. 523; Emergency Hospital v. Stevens, 146 Md. 159, 126 Atl. 101." And Mr. Justice FRANKFURTER said in *Milk Wagon Drivers Union v. Meadowmoor Dairies,* 312 U. S. 287, 298; "(3) The injunction which we sustain is 'permanent' only for the temporary period for which it may last. It is justified only by the violence that induced it and only so long as it counteracts a continuing intimidation. Familiar equity procedure assure opportunity for modifying or vacating an injunction when its continuance is no longer warranted."

Where, as here, the conduct of the defendants, which necessitated the injunction, was so violent and unjustifiable and the fears of the employees who were threatened or assaulted still persist, the Court below did not abuse its discretion in finding or concluding that lapse of time, a change of ownership of the business, and the union's compliance with and good behavior during the period of the decree, were not sufficient to prove or to furnish reasonable grounds for believing that defendants' unlawful conduct will not be resumed if the injunction to protect the employees from violence is dissolved. In this connection it is important to note that in the converse situation where a company sought a termination of a cease and desist order because of the same change of circumstances here alleged, namely, lapse of time, a change of union and the company's compliance with and good behavior during the period of the order, the Supreme Court of the United States enforced and refused to terminate the desist Order: *N. L. R. B. v. Pennsylvania Greyhound Lines,* 303 U. S.

261; *N. L. R. B. v. Mexia Textile Mills,* 339 U. S. 563; *N. L. R. B. v. Pool Mfg. Co.,* 339 U S. 577.

For these reasons I would affirm the Order of the Lower Court.