Wilkes Sportswear, Inc. *v.* International Ladies' Garment Workers' Union, Appellant.

Argued October 1, 1954. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Sidney G. Handler,* with him *D. J. Flood, James L. Brown, Morris P. Glushiem,* New York, *Flood & Brown,* and *Douglass, Handler, Rosenberg & Ware,* for appellants.

*Max Rosenn,* with him *Rosenn, Jenkins, Greenwald & Cardoni,* and *Frank Slattery, Jr.,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, January 3, 1955:

In this case an injunction was issued restraining defendants from picketing plaintiff's premises and from interfering with its employes in the course of their work. The questions now presented are whether the issuance of the injunction was justified, and whether, even if it were, the injunction should now be dissolved because of the lapse of more than five years since it was issued and the picketing ceased.

The proceedings had somewhat of a checkered career in the court below. Judge LEWIS, after holding two hearings, issued a preliminary injunction on June 17, 1949. The application for final injunction was heard by Judge FLANNERY, who, after likewise holding two hearings (at which, however, no testimony was taken regarding the nature or extent of the picketing), entered a decree nisi on December 26, 1951, dissolving the preliminary injunction and dismissing the bill of complaint. On exceptions to this decree filed by plaintiff, the majority of the court en banc, Judge FLANNERY dissenting, sustained the exceptions and on December 16, 1952, entered a final decree in the identical terms of the preliminary injunction issued by Judge LEWIS.

Did the facts warrant the issuance of the injunction? Judge LEWIS found as facts that at the time the picketing began five of plaintiff's employes were members of the defendant union but in the interim had discontinued their employment, leaving 52 employes none of whom was a union member; that there was no strike and apparently no differences of any kind between plaintiff and its employes; that the pickets were disorderly and prevented both customers and employes from entering and leaving plaintiff's plant; that when the picketing began on March 30, 1949, some 16 to 30 pickets appeared carrying signs inscribed "On Strike, International Ladies' Garment Workers Union" but subsequently changed to read: "Wilkes Sportswear does not employ union help. Signed, International Ladies' Garment Workers' Union"; that from March 30 until the date of the final hearing on June 1 the picketing continued, and on April 20 there were between 50 and 100 pickets in front of the premises; that on the latter date some of the employes were assaulted and their clothes torn in an attempt to prevent them

from entering the premises; that during the period from March 30 to May 16 several of the pickets used lewd and profane language, and on several occasions it was necessary to call the local police to insure safe entrance and exit to both employes and management; that the picketing reached another climax on May 9 when 20 or 30 pickets appeared and used obscene and profane language in addressing the employes; that at the hearing on June 1 it developed that, although defendants were then maintaining but one picket carrying a sign, other pickets loitered about the premises and interfered with plaintiff's employes and customers and persisted in hurling vile and vulgar language at anyone who attempted to enter the building. In accepting these findings of Judge LEWIS the court en banc pointed out that he alone had heard the testimony as to the nature of the picketing, Judge FLANNERY having merely read that testimony as it appeared in the record.

Both parties to this controversy agree that plaintiff's business involved interstate operations (cf. *National Labor Relations Board v. Fainblatt,* 306 U. S. 601), which makes it unnecessary to discuss the facts justifying such mutual understanding. To the extent, therefore, that plaintiff claimed defendants were attempting to coerce its employes into joining the union or to coerce plaintiff into compelling or influencing its employes to join the union, plaintiff would be obliged to present its grievance to the National Labor Relations Board and not to the courts of the State: *Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776 (A.F.L.),* 346 U. S. 485. But in view of the court's findings in regard to the lawlessness, violence and intimidation of plaintiff's employes and customers which featured the picketing the court certainly had jurisdiction of the bill of complaint and was justified in

issuing an injunction against picketing so conducted: *Wortex Mills, Inc. v. Textile Workers Union of America, C.I.O.,* 369 Pa. 359, 364, 85 A. 2d 851, 854. It was pointed out in the *Garner* case (p. 488) that a State may still exercise "its historic powers over such traditionally local matters as public safety and order and the use of streets and highways." In *Milk Wagon Drivers Union of Chicago, Local 753, v. Meadowmoor Dairies, Inc.,* 312 U. S. 287, 295, it was categorically declared that "The Fourteenth Amendment still leaves the state ample discretion in dealing with manifestations of force in the settlement of industrial conflicts." In *Allen-Bradley Local No. 1111, United Electrical, Radio & Machine Workers of America, v. Wisconsin Employment Relations Board,* 315 U. S. 740, 749, it was held that the National Labor Relations Act did not prevent the State from enjoining mass picketing, threats of personal injury to employes desiring to work, or the obstruction of ingress to and egress from the employer's factory. It is clear, therefore, that the injunction was legally and properly issued. However, there is merit in defendant's criticism of the broadness of its terms.* It restrained defendants from "(1) *picketing the plaintiff's premises* and from obstructing and interfering with the plaintiff in the normal and ordinary use of its property, and from intimidating, molesting or accosting other persons entering or leaving plaintiff's premises; and (2) from threatening or assaulting, or directly or indirectly interfering with the employes . . . while engaged in or going to and from their work." It will thus be seen that in addition to the specific restraints imposed upon defendants the

---

* Defendants presented a petition to the court on October 25, 1950, praying that the decree entered on June 17, 1949 (which was in the identical terms of the subsequent final decree), be modified to permit picketing in a peaceful manner and for a lawful purpose.

injunction placed a ban upon *all* picketing of plaintiff's premises, and thus, while enjoining them from illegal acts, went further and enjoined them from their right to pursue lawful activities, by peaceful methods, to induce the employes of plaintiff's plant to join the union. It is true that an injunction even of such scope did not transgress the constitutional *power* of the court: *Milk Wagon Drivers Union of Chicago, Local 753, v. Meadowmoor Dairies, Inc.*, 312 U. S. 287. But in that same case it was said (p. 296) : "It is . . . relevant to remind that the power to deny what otherwise would be lawful picketing derives from the power of the states to prevent future coercion. Right to free speech in the future cannot be forfeited because of dissociated acts of past violence." In *Lauf v. E. G. Shinner & Co.*, 303 U. S. 323, it was held that the injunction there issued was too broad in that it excluded peaceful picketing which did not involve the exercise of fraud, violence or breach of the peace. It was said in *Carnegie-Illinois Steel Corp. v. United Steelworkers of America*, 353 Pa. 420, 430, 431, 45 A. 2d 857, 861: "Injunctions are not issued against picketing when the latter's only purposes are to advertise the fact that there is a strike in a certain plant and to persuade workers to join in that strike and to urge the public not to patronize the employer." Picketing carried on solely for organizational purposes, that is, to persuade non-union employes of an establishment to join the union, is constitutionally protected and therefore cannot properly be enjoined: *Garner v. Teamsters, Chauffeurs and Helpers, Local Union No. 776*, 373 Pa. 19, 21, 22, 94 A. 2d 893, 895; *Pappas v. Local Joint Executive Board*, 374 Pa. 34, 36, 37, 96 A. 2d 915, 916. Therefore, under the circumstances of this case, and having regard to the fact that the acts of violence complained of were more or less episodic rather than con-

tinuous, the injunction as issued should be modified by eliminating the words: "picketing the plaintiff's premises," and limiting itself to the remainder of the injunction as issued, thus confining its ban to the prohibition of violence, threats, intimidation, or lawlessness of any kind.

As thus modified the final decree of the court below is affirmed at defendants' costs.

A second question has been introduced into the present proceedings by a petition filed by defendants requesting that the record be remanded to the court below with direction that, upon its receipt of a petition to dissolve the final decree, it should determine the issue raised thereby. Defendants point to the fact that no picketing of any kind has taken place since the issuance of the preliminary injunction on June 17, 1949,—being a period of more than five years and covering the year that elapsed between the dissolution of the injunction in December, 1951, and its reinstatement by the court en banc in December, 1952. In their brief they assure this court that they intend at all times hereafter to confine their conduct and activities to lawful picketing for organizational purposes. The question, then, is whether under such circumstances the injunction, even as heretofore modified, should be retained in force, or whether it should now be dissolved, subject, of course, to being reinstated if any disorderly picketing or other unlawful activities recur.

In *Milk Wagon Drivers Union of Chicago, Local 753, v. Meadowmoor Dairies, Inc.,* 312 U. S. 287, 298, the court said: "The injunction which we sustain is 'permanent' only for the temporary period for which it may last. It is justified only by the violence that induced it and only so long as it counteracts a continuing intimidation. Familiar equity procedure assures opportunity for modifying or vacating an injunction

when its continuance is no longer warranted." In *Lad-ner v. Siegel (No. 4)*, 298 Pa. 487, 496, 148 A. 699, 702, it was said: " 'The court which rendered a decree for an injunction may . . . open, vacate or modify the same where the circumstances and situation of the parties are shown to have so changed as to make it just and equitable to do so.' " And again (p. 500, A. p. 703) : "A decree protecting a property right is given subject to the rules governing modification, suspension or dissolution of an injunction. The decree is an ambulatory one and marches along with time affected by the nature of the proceedings." However, in *Tamagno v. Waiters and Waitresses Union*, 373 Pa. 457, 461, 96 A. 2d 145, 147, it was said: "Undoubtedly the mere fact that an illegal practice has been abandoned does not necessarily cause a controversy to become moot. The question always remains whether such practice is likely to be resumed and even though the defendant may give assurance that he will not err again it is for the court to say whether the complainant should be compelled to accept such an assurance instead of insisting upon the continuance of the injunctive relief which he has obtained." In that case, because of the fact that there had been no picketing or threats of picketing by defendants for the period of two years after the injunction issued, but also because the ownership of the employer's business had changed hands, we held (p. 463, A. pp. 147, 148) that defendants were entitled to have the injunction dissolved and "not to have it held over them forever as a continuing threat against any future assertion of their constitutional right peacefully to picket should new occasions arise to justify such action." In *Pappas v. Local Joint Executive Board*, 374 Pa. 34, 96 A. 2d 915, we held similarly that, because the final decree enjoining picketing had been entered in 1944 and for nine years thereafter the defendants had not

engaged in any disorder, acts of violence, threats, or attempts at coercion, they were justified in their contention that the injunction should be dissolved.

The controlling question, therefore, is whether there is any reasonable ground to believe, under all the circumstances, that the illegal practices which led to the original entry of the injunction would be repeated if the injunction were dissolved. The answer to that question here can be given only, in the first instance, as in the *Tamagno* and *Pappas* cases, by the court below upon consideration of a petition presented to it seeking dissolution of the injunction, and testimony that may be offered in support thereof. Accordingly, the record is remanded to the court below for such determination.