547 A.2d 814

Three Rivers Aluminum Company *v.* George Brodmerkle et al. Catherine Robinson, Leslie Tarquinio, et vir et al., Appellants.

410

Argued May 26, 1988, before Judges DOYLE, PALLA-DINO and McGINLEY, sitting as a panel of three.

*Burton C. Duerring,* for appellants.

*John J. Zagari, Zagari and Scalise, P.C.,* for appellee.

*Arthur J. Leonard,* with him, *Thomas V. Gebler, Jr., Robb, Leonard & Mulvihill,* for amicus curiae, The Marshall Township Board of Supervisors.

OPINION BY JUDGE DOYLE, September 14, 1988:

This appeal stems from Three Rivers Aluminum's (Appellee) successful attempt to vacate an injunction which prohibited it from serving food and alcohol to the general public in the clubhouse of its eighteen-hole golf course. For the following reasons, we reverse.

In 1945, Marshall Township (Township) enacted Ordinance No. 1, a comprehensive zoning ordinance. Under Ordinance No. 1, restaurants were permitted only in "D" (business) zones. In early 1954, Nordev, Inc. (Nordev) acquired 250 acres of land in the Township. The land at that time was partially zoned "A" (residential) and partially zoned "F" (farm district). On July 2, 1954, the Township Supervisors (Supervisors), at Nordev's request, rezoned Nordev's entire tract "A" residential. Concurrently with the rezoning, the Supervisors enacted Ordinance No. 17, which provided that a permissible use in an "A" zone was:

> A golf course of not less than nine (9) holes and having an area fully utilized of not less than fifty (50) acres for each nine holes, together with necessary clubhouse and *eating facilities,* professional shop and locker room facilities. (Emphasis added.)

Thereafter, Nordev constructed an eighteen-hole golf course known as the Venango Trail Golf Course. The golf course included an equipment building and clubhouse. Part of the clubhouse included the "eating facilities," which consisted of twelve stools and eight tables with four chairs each. These "eating facilities" were operated by Marcella Cleary (Cleary) as Nordev's lessee. The golf course was open to the public upon payment of a fixed fee for the privilege of playing golf.

On April 28, 1955, Nordev was issued a permit to expand the eating facilities. This addition was to include a bar, although the bar was not shown in the plans submitted to the building inspector. At a Supervisor's meeting on November 3, 1955, a representative of Nordev informed that body that it was introducing a liquor license on the golf course. This was to be accomplished by Cleary transferring a hotel restaurant liquor license she held to the "eating facilities." When informed by Nordev that the "eating facilities" would be open to the general public, and not just golfers, the Supervisors stated that a zoning change would be required because the "eating facilities" under Nordev's plan would become a commercial eating establishment, *i.e.*, a restaurant.

Thereafter, Cleary applied to the Pennsylvania Liquor Control Board (PLCB) to transfer the liquor license to the "eating facilities." While Cleary's application was pending before the PLCB, however, the Township, effective March 1, 1956, amended Ordinance No. 17 by Ordinance No. 21 to delete "eating facilities" entirely as a permitted accessory use to a golf course. Subsequently, on April 25, 1956, the PLCB approved the transfer of the liquor license.

After the liquor license transfer, Cleary began to serve food and liquor to the general public although it was not a permitted use. When the Supervisors did not take action against Nordev or Cleary, a group of citizens filed an action in equity in April 1957 seeking to enjoin Nordev and Cleary from violating the Township Zoning Ordinance. After hearings, the Honorable JOHN T. DUFF, JR., issued a permanent injunction. In his adjudication accompanying the decree nisi, Judge DUFF made the following relevant conclusions of law:

(2) Marshall Township's Zoning Ordinance No. 17 limits clientele of the restaurant in the

'clubhouse' on Nordev, Inc.'s property to the clientele of Nordev, Inc.'s golf course and prohibited the sale of food as well as that of liquor to persons not using said golf course.

(3) Marshall Township's Zoning Ordinance No. 17 permitted the sale or dispensing of liquor as well as food in the clubhouse restaurant on Nordev's golf course.

(4) The amendment by Ordinance No. 21 of said Ordinance No. 17, deleting 'eating facilities' as a permissible use on Nordev's property did not alter defendant Cleary's right under Ordinance No. 17 to sell or dispense liquor as well as food to persons using Nordev's golf course.

(5) The expansion by defendants Nordev, Inc., and Cleary of the restaurant clientele beyond the golf course clientele constitutes a continuing violation of Marshall Township's Zoning Ordinance No. 17 and No. 21 and equity may enjoin such violation.

Nordev and Cleary filed exceptions to the decree nisi, but these were dismissed by the common pleas court sitting *en banc* on September 13, 1961. *No appeal* was taken from the entry of the final decree.

In 1962, the Township adopted Ordinance No. 33, which replaced Ordinance No. 1. Ordinance No. 33 allowed recreational facilities, such as golf courses, as conditional uses. In 1981, Ordinance No. 33 was replaced by Ordinance No. 144, which permitted golf courses of regulation size with country clubs in an "A" zone. Neither Ordinance No. 33 nor Ordinance No. 144 permitted restaurants or "eating facilities" in "A" zones.

Sometime in 1985 Nordev sold the golf course property to Appellee. Appellee then obtained a building permit to expand the clubhouse. On July 12, 1986, Appellee opened the "eating facilities" to the general pub-

lic after advertising it would do so in a local paper. Appellee also erected a sign advertising the "eating facilities" as open to the general public. About this time, Appellee was notified that neither the sign nor the opening of the "eating facilities" to the general public complied with the Township Zoning Ordinance.

On December 5, 1986, Appellee filed a rule to show cause why the injunction should not be dissolved. Slightly over a year later, the trial court ruled that the law in regard to whether a municipality could zone areas with respect to liquor sales had changed,[1] and dissolved the injunction. This appeal followed.

Under Pa. R.C.P. No. 1531(c), any party[2] may move at any time to dissolve an injunction. Our Supreme Court has said that a court may vacate, modify or dissolve an injunction if: (a) in its discretion, judicially exercised, it believes the ends of justice would be served by modification; (b) the law, common or statutory has changed, been modified or extended; or (c) there is a change in the controlling facts on which the injunction rested. *Ladner v. Siegel*, 298 Pa. 487, 148 A. 699 (1930). Appellee contends, and the trial court agreed, that the injunction should be dissolved because the law has changed. We respectfully disagree.

---

[1] We note that the trial court in this case failed to make any findings of fact. While normally we remand cases when the trier of fact fails to make factual findings at all or on a necessary issue, *see Reed v. Unemployment Compensation Board of Review*, 104 Pa. Commonwealth Ct. 373, 522 A.2d 121 (1987), where the basis of the decision is apparent, we will decide the case. *Mellon Bank, N.A. Appeal*, 78 Pa. Commonwealth Ct. 463, 467 A.2d 1201 (1983).

[2] We note that Appellee was not a party to the original action. As successor-in-interest to Nordev, however, Appellee would still be bound by the injunction because a zoning injunction goes to the use to which the land is put, and runs with the land. Thus, such an injunction binds subsequent owners of the property, absent a change in the law.

In *Spring Township v. Majestic Copper Corp.,* 435 Pa. 271, 256 A.2d 859 (1969), the case relied upon by the trial judge to support his conclusion that the law had changed, the recreational facility in question was operated as a swimming pool, along with a lounge (which served no liquor) and bathhouse, that were open only to pool members and their guests. The property was then sold to a new owner, who obtained a restaurant liquor license for the lounge. The township then filed an equity action seeking to enjoin the new owner from operating the lounge and selling alcoholic beverages. The trial court enjoined the new owner "from using the subject property '. . . for the sale of malt and alcoholic beverages to the public." *Id.* at 272, 256 A.2d at 859.

The Supreme Court reversed the trial court's decision stating:

> The conclusion of law entered by the lower court that the sale of liquor is a violation of a zoning ordinance is impermissible. A township may not zone areas with respect to liquor sales since the Commonwealth has given complete control and regulation of the sale of alcoholic beverages to the Liquor Control Board. Hilovsky Liquor License Case, 379 Pa. 118, 108 A.2d 705 (1954); Sawdey Liquor License Case, 369 Pa. 19, 85 A.2d 28 (1951). In Hilovsky the Court said that once the zoning authorities have permitted a restaurant, they cannot then instruct the owner how to operate. '. . . [M]unicipalities may not invade the field of regulation which the State legislature has completely filled by its comprehensive liquor control act. . . . A municipality may not in the guise of a zoning ordinance regulate the business of dispensing liquor.'

*Id.* at 272-73, 256 A.2d at 859-60 (omission in original).

The court further noted, however, that:

The court further noted, however, that:

> [A]ppellee [Spring Township] did not base its attack on the existence of a restaurant as a violation of the zoning ordinance. The attack was restricted to the serving of liquor in the operation of the restaurant. The record does not disclose that the township authorities objected to appellants [Majestic Copper Corporation] providing food to the public, which activity is a statutory requirement for obtaining a restaurant license for the sale of alcoholic beverages.

*Id.* at 273, 256 A.2d at 860.

Thus, while a municipality may not seek to regulate directly the sale of liquor by zoning, it is also true that where the dispensation of food and liquor to the general public is not a permitted use in that zoning district, such activity can be enjoined. *Majestic Copper Corp.*

Turning to the facts of the present case, Judge DUFF ruled, and we agree, that under Ordinance No. 17 the "eating facilities" were permitted *only* as an *accessory use*. This conclusion is supported by the fact that had the Supervisors intended to allow Nordev to operate a restaurant, they would have clearly said so. Instead, the Township allowed restaurants *only* in "D" zones, not "A" zones. Where a zoning ordinance permits food preparation and dining facilities as an accessory use to a recreational facility, such food preparation and dining facility's clientele is limited to the recreational facility's patrons and their guests. *See Majestic Copper Corp.* Therefore, we believe that Judge DUFF correctly determined that Nordev's and Cleary's opening of the golf course's "eating facilities" to the general public constituted a violation of Ordinance No. 17. Judge DUFF's ruling does not violate our Supreme Court's holding in *Majestic Copper Corp.* because his injunction is based on Nordev's and Cleary's violation of the use restriction imposed by Or-

dinance No. 17 upon the "eating facilities," and not upon the ground that Nordev and Cleary somehow violated Ordinance No. 17 by dispensing liquor. For Judge DUFF to have held otherwise would have been to allow Nordev to operate two *principal* uses on its property, a golf course and a commercial restaurant, an impermissible result. *See, e.g., Jaffe Appeal,* 100 Pa. Commonwealth Ct. 498, 514 A.2d 1016 (1986); *Rizzone Appeal,* 88 Pa. Commonwealth Ct. 502, 490 A.2d 26 (1985).

Reversed.[3]

## ORDER

Now, September 14, 1988, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby reversed.

---

[3] Appellee also argues that it is not bound by the injunction because it was not a party to the original equity action. This issue was not raised below and is waived. Pa. R.A.P. 302(a); *Griffith v. Zoning Hearing Board of Exeter Township,* 109 Pa. Commonwealth Ct. 382, 384 n.1, 531 A.2d 121, 122 n.1 (1987). This argument is without merit in any event because Appellee had notice of the injunction by the middle of 1986, and was of the class intended to be restrained by the injunction, *i.e.,* those persons who wished to operate a restaurant on Nordev's property, and, thus, was bound. *See Neshaminy Water Resources Authority v. Del-Aware Unlimited, Inc.,* 332 Pa. Superior Ct. 461, 481 A.2d 879 (1984); *Sperry & Hutchinson Co. v. McKelvey Hughes Co.,* 64 Pa. Superior Ct. 57 (1916); *see also supra* footnote 2. Moreover, even assuming this argument to be true, Appellee would still have to show that under the Township's current zoning ordinance it could open the "eating facilities" to the general public.