610 A.2d 491

**Edward SOJA and Barbara Soja, Appellees,**

v.

**FACTORYVILLE SPORTSMEN'S CLUB, Appellant.**

Superior Court of Pennsylvania.

Argued April 30, 1992.

Filed July 13, 1992.

30

James E. Davis, Tunkhannock, for appellant.

George E. Clark, Jr., Scranton, for appellees.

Before CAVANAUGH, CIRILLO and POPOVICH, JJ.

POPOVICH, Judge:

■ We are asked to review the September 14, 1991, order of the Court of Common Pleas of Wyoming County, sitting in Equity, upholding an injunction issued against the defendant/appellant, Factoryville Sportsmen's Club. We reverse.

We quote with approval from the appellant's recitation of the facts in its brief; to-wit:

The initial Complaint in Equity, [b]y Mr. and Mrs. Soja vs. the Factoryville Sportsmen's Club was filed on July 5, 1984. Testimony was taken by the Wyoming County Court of Common Pleas, sitting in Equity, on September 4, 1984, pursuant to the Sojas' request for a Preliminary Injunction. The Sojas maintained that the Club's operation of trap shooting ranges in Overfield [T]ownship, Wyoming County, was a nuisance and, that the Sojas, being property owners adjacent to the firing ranges, were entitled to injunctive relief and damages. On August 15, 1985, the Wyoming County Court of Common Pleas, Roy A. Gardner, President Judge, filed an Adjudication and Decree Nisi, finding that the Club's activity was lawful and not a public nuisance but that there was a private nuisance or nuisance in fact, requiring relief. After post-trial motions by both parties were denied, the Factoryville Sportsmen's Club appealed to the Superior Court. The appeal resulted in a reversal of the Trial Court's Order on procedural grounds, in that the Order of the Trial Court constituted a permanent injunction, when the purpose of the only hearing that had been held by the Trial Court, was for the purpose of [a] Preliminary Injunction. *Soja v. Factoryville Sprotsmen's [sic] Club*, 361 Pa.Superior Ct. 473, 533 [522] A.2d 1129 (1987). The matter was remanded to the Trial Court for the purpose of [a] full hearing on the question of permanent relief. The Court, sitting in Equity, took additional testimony on the 21st of April, 1987, and the 18th of June, 1987 before closing the record. On November 30, 1987, Wyoming County Court filed an Adjudication and Decree Nisi, granting injunctive relief to the Sojas. The Club filed timely post-trial motions which were argued before the Court of Common Pleas of Wyoming County, sitting in Equity, end [*sic*] a [F]inal Decree and Adjudication were filed by the Court on the 25th of May, 1988, concluding that the Club's activities constituted a nuisance in fact; that the Sojas

were not guilty of laches; and that the Sojas had sustained their burden of proof. Pursuant to these findings, the Wyoming County Court granted injunctive relief to the Sojas, limiting the days and hours of shooting, on the Appellant's shooting ranges, to Tuesdays, Thursdays and either Saturday or Sunday, during the months of April through November of each year, commencing not earlier than 10:00 a.m. and continuing not later than 8:00 p.m. or sunset. In addition, on Tuesday during the shooting season, trap shooting may continue until 10:00 p.m. The final decree also permitted shooting for weapons sighting purposes on Saturday during the winter months, no earlier than 10:00 a.m. and not later than 8:00 p.m. or sunset, whichever occurs first. The Order also included other restrictions with respect to the club's activities.

Eight (8) days after the Final Decree was filed, the Legislature of Pennsylvania, on June 2, 1988, enacted Act No. 74 of 1988, P.L. 452[,] 35 P.S. §§ 4501, 4502, which provides immunity for owners of shooting ranges in the Commonwealth of Pennsylvania, from civil action, criminal prosecution, actions for nuisance and injunctions, on the basis of noise or noise pollution. Upon learning of the enactment of this statute, the Club promptly filed an application for reconsideration of the Wyoming County Common Pleas Order on June 16, 1988, citing the provisions of the Act of June 2, 1988. Notice of Appeal to the Pennsylvania Superior Court was filed June 23, 1988. The Wyoming County Court, by Orders dated June 27, 1988, denied the application for reconsideration and also denied a request for the granting of supersedeas or stay pending the appeal to the Superior Court.

The matter was argued before a panel of the Pennsylvania Superior Court, consisting of Ju[dg]es Cirillo, Beck and Kelly, on December 9, 1988, in Philadelphia. On June 29, 1989, by Memorandum Opinion and Order, the Superior Court Panel affirmed the Adjudication and Order of the Wyoming County Court of Common Pleas. The Factoryville Sportsmen's Club filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court. By

Order dated April 18, 1990, the Pennsylvania Supreme Court, [P]er Curiam, granted the Petition for Allowance of Appeal. The Supreme Court on January 14, 1991, issued the following Judgment:

ON CONSIDERATION WHEREOF, it is now here ordered and adjudged by this Court that this case be remanded to the Court of Common Pleas of [the] 44th Judicial District, Wyoming County Branch, to consider impact of Act of June 2, 1988, P.L. 452, No. 74, 35 P.S. § 4501, Jurisdiction relinquished.

*Soja v. Factoryville Sprotmen's [sic] Club*, 526 Pa. 185, 584 A.2d 953 (1991).

On September 14, 1991, after the parties submitted briefs, the Court of Common Pleas issued its Order finding that Act 74 has no impact upon the original decree dated May 25, 1988.... Appellant[,] within the time provided[,] filed its notice of appeal....

The sole issue which the appellant has proffered for our consideration appears in its "Statement of Questions Involved" and reads:

WHETHER A STATUTE, ENACTED SUBSEQUENT TO THE ENTERING OF AN INJUNCTION BUT PRIOR TO THE EXPIRATION OF THE APPEAL PERIOD, MUST BE APPLIED TO THE CONTINUING EQUITY PROCEEDING AND MANDATES MODIFICATION OR DISSOLUTION OF THE INJUNCTION?

We disagree with the lower court's disposition, and we do so by a route which uses as its guidepost the case of *Ladner v. Siegel*, 298 Pa. 487, 148 A. 699 (1930).

In *Ladner*, an injunction was granted to prevent the use of a building for garage purposes by a group of individuals (for brevity identified as Siegel) and by adjoining landowners (referred to as Ladner).

Despite the issuance of an injunction, Siegel used the building for parking and, as a result thereof, was adjudged to be in contempt. On appeal, the order was sustained, but Siegel was granted leave to seek modification of the injunction before the court below. An order to that effect was

issued and the Ladner group perfected an appeal challenging the modification of the initial injunction. The request for modification was granted.

The court of equity's modification of the injunction was affirmed on appeal. In the course of doing so, our Supreme Court set forth some time-honored precepts which need to be satisfied as a condition precedent to allowing an injunction to be altered.

First, the Court acknowledged that an injunction, despite the equitable nature of the proceedings resulting in its issuance, was subject to modification or removal. To do so, however, the Court deemed the following to be a *sine qua non* to its implementation; to-wit:

> The modification of a decree in a preventive injunction is inherent in the court which granted it, and may be made, (a) if, in its discretion judicially exercised, it believes the ends of justice would be served by a modification, *and* (b) where the law, common or statutory, has changed, been modified or extended, *and* (c) where there is a change in the controlling facts on which the injunction rested.

298 Pa. at 497, 148 A. 699 (Emphasis added).[1] At first blush, it may appear that the use of the conjunction "and" in *Ladner* requires that all three factors must coalesce as a condition precedent to a modification/recission of an injunction. In actuality, however, the case law holds otherwise. *Id.*

For example, in *46 South 52nd Street Corp. v. Manlin,* 404 Pa. 159, 172 A.2d 154, 155 (1961), the same Court observed:

> There is no question that a court of equity which has entered a decree for an injunction may open, vacate or modify the same where the situation and circumstances of the parties *or* the law are shown to have so changed as to make it just and equitable to do so. [Emphasis added]

---

1. Neither party argues that the vintage nature of the case undermines its continued vitality and applicability to the modification/recission of an injunction. See *Mohn v. Hahnemann Medical College and Hosp.,* 357 Pa.Super. 173, 515 A.2d 920, 922 (1986).

Even more insightful into the disjunctive nature of the *Ladner* criteria is *Tamagno v. Waiters and Waitresses Union*, 373 Pa. 457, 96 A.2d 145, 146 (1953), wherein the Supreme Court explicitly deleted reference to *Ladner's* "ends of justice" and "change in the law" criteria in deciding whether to dissolve an injunction; to-wit:

> There is, of course, no question but that a court of equity has the power to modify or vacate an injunctive decree previously granted by it if the circumstances and situation of the parties have so changed as to make it just and equitable to do so and if the court feels that the protection given to the complainant is no longer necessary. *Ladner v. Siegel* (No. 4), 298 Pa. 487, 495, 496, 148 A. 699, 701, 68 A.L.R. 1172. It was stated in that case in 298 Pa. at page 497, 148 A. at page 702, that "The modification of a decree in a preventive injunction is inherent in the court which granted it, and may be made * * * if, in its discretion judicially exercised, it believes the ends of justice would be served by a modification, * * *." And, further, 298 Pa. at page 495, 148 A. at page 701, that while an injunctive decree "is an adjudication of the facts and the law applicable thereto, it is none the less executory and continuing as to the purpose or object to be attained; * * *. It operates until vacated, modified, or dissolved." And again, 298 Pa. at page 500, 148 A. at page 703, that "A decree preventing [an injury to a property right] does not give to the complaining party a perpetual or vested right either in the remedy, the law governing the order, or the effect of it. He is not entitled to the same measure of protection at all times and under all circumstances. A decree protecting a property right is given subject to the rules governing modification, suspension, or dissolution of an injunction. The decree is an ambulatory one, and marches along with time affected by the nature of the proceeding."

373 Pa. at 460–61, 96 A.2d at 146–47. Accord *Three Rivers Aluminum Co. v. Brodmerkle*, 119 Pa.Cmwlth. 409, 547 A.2d 814, 816 (1988) (Court may modify an injunction if: a)

ends of justice served; b) the law has changed; or c) the controlling facts have changed); *Records Center, Inc. v. Comprehensive Management, Inc.,* 363 Pa.Super. 79, 525 A.2d 433, 436 (1987) (An injunction may be dissolved only upon a showing of changed circumstances; no mention is made that a "change in the law" must be extant as well); *Dravosburg Housing Ass'n v. Dravosburg Borough,* 71 Pa.Cmwlth. 144, 454 A.2d 1158, 1161 (1983) (Preventive injunction may be modified where there is a change in the controlling facts); *Borough of Trappe v. Longaker,* 59 Pa.Cmwlth. 572, 430 A.2d 713, 715–16 (1981) (An injunction may be vacated where the circumstances of the parties or the law changes).

From the preceding it is evident that it has been well-established for some time now that:

> ... a change in the law after the rendition of a decree was grounds for modification or dissolution of that decree insofar as it might affect future conduct. *Pennsylvania v. Wheeling & Belmont Bridge Co.,* 18 How. 421, 431–432, 15 L.Ed. 435 [ (1855) ]. This principle is rooted in the practice of courts of equity and is well settled in the vast majority of the States. See 7 Moore, Federal Practice (2d ed.1955) ...; *Ladner v. Siegel,* 298 Pa. 487, 148 A. 699, 68 A.L.R. 1172.

*Polites v. United States,* 364 U.S. 426, 438, 81 S.Ct. 202, 209, 5 L.Ed.2d 173 (1960) (Dissenting Opinion by Justice Brennan, with whom the Chief Justice, Justice Black & Justice Douglas joined); *United States v. Swift & Co.,* 282 U.S. 468, 469, 51 S.Ct. 202, 202, 75 L.Ed. 464 (1931).

To reiterate, the *Ladner* Court found that the first criterion need not be delved into because it drew its strength from the lower court's interpretation of its own decree. As for the remaining criteria, the Court found that an injunction does not establish a vested right in an order or decree creating it:

> A decree protecting a property right is given subject to the rules governing modification, suspension or dissolution of an injunction. The decree is an ambulatory one

and marches along with time affected by the nature of the proceeding.

298 Pa. at 500, 148 A. 699. In essence, the Court held that where the right to an injunction has been modified according to settled authority, e.g., where the act enjoined is no longer prohibited, "it is quite plain the decree [injunction] of the court cannot be enforced." This second element was satisfied in *Ladner* as well as the case at bar.

Accordingly, consistent with established case law, we find that the appellant has proven, with the passage of Act 74 of 1988 [2] (which validates gun ranges and proscribes injunctions against the same) is a "change in the law" under *Ladner* to justify a recission of the lower court's injunction. To the extent that the lower court has ruled to the contrary, its order is reversed and the injunction entered against the appellant is rescinded.

Order reversed; injunction rescinded; jurisdiction is relinquished.

2. Act 74 provides, as is herein relevant:
   **§ 4502. Nuisances and injunction**
   The owners of the ranges shall not be subject to any action for nuisance....
   The Act of June 2, 1988, P.L. 452, No. 74, § 2, immediately effective, 35 P.S. § 4502 (Supp.1991).